JOSEPH T. PHILLIPS v. THE NORTH CAROLINA RAIL-ROAD·
COMPANY.

*Common-Carriers---Powers and Liabilities---Transportation of·
Freight—Evidence—Special Contract.*

1. A common carrier (except in the case of an incorporated company·
   disabled by the provisions of its charter) may by special contract·
   bind itself to convey and deliver goods to points beyond its own·
   lines and outside the limits of the State wherein its road lies.

2. Where various companies form an association and unite in making·
   a continuous line of their respective roads, and collect either in ad-·
   vance at the place of receiving or at the place of· delivery the·
   freight due for the entire route, subdividing among themselves,·
   the receiving road becomes responsible for the default of any of·
   the associated companies and no special contract need be shown.

3. Where no such association exists and no special contract is made,·
   and goods are delivered to a road for transportation over it, though
   marked to a place beyond its terminus, ·the carrier discharges its·
   duty by safely conveying over its own road and then delivering to··
   the next connecting road in the direct and usual line of common
   carriers towards the point of ultimate destination.

4. Where on the trial below it appeared that the defendant company
   received certain freight for transportation to a point beyond its ter-
   minus and gave therefor a bill of lading, "Received from L to be
   laden on the freight cars 1 bale bedding, J. F. Phillips, Monroe, La.·
   marks, &c., as per margin (condition of contents unknown) to———
   or assigns at———station" signed by the agent of defendant, and at
   the time of receiving such freight the agent said to the shipper that·
   the goods would reach Monroe in good condition and in a few days·
   &c.; *Held*, that there was no evidence to go to the jury of a special
   contract on the part of defendant to convey the goods to the point
   of destination and deliver them to plaintiff there.

   (*Dixon* v. *R. & D. R. R. Co.*, 74 N. C. 538, cited and approved.)

CIVIL ACTION for Damages, tried at Spring Term, 1877, of·
WAKE Superior Court, before *Buxton, J.*

On the 31st of January, 1872, the plaintiff being about to

remove to the State of Louisiana, delivered to the defendant's agent at Raleigh, a bale of goods, and took from the agent a receipt in these words ;

| | |
|---|---|
| Marks, &c. *Receipt for Goods.* | "North Carolina R. R.  Raleigh Station, Jan. 31st, 1872.  Received from A. G. Lee & Co. to be laden on the freight cars 1 Bale bedding, &c., J. F. Phillips, Monroe, La., marks, &c., as per margin, which are to be delivered (condition of contents unknown) to————— or assigns at——— station.  D. R. Newsom, Agt. N. C. R. R. Co." |

The plaintiff testified that he delivered the bale at the station to the agent, D. R. Newsom, who made examination and declared the article to be in good condition, and said it would reach Monroe in like good order; that he informed the agent that the bale must go to Monroe and he wanted it put through as soon as possible, as the witness himself desired to start at once, and would need the goods as soon as he arrived at Monroe. The plaintiff offered to pay the freight in advance, and the agent declined to take it, and told the plaintiff to pay at Monroe when the bale reached that place, which would be in a few days; and the agent made some other remark, which plaintiff did not distinctly remember, about the pay of the road being remitted from Monroe. The agent of the defendant who gave the receipt has since died.

It was shown by the defendant that the bale was at once put on one of its freight cars and transported safely to Charlotte, the terminus of its line of road, and about the 3d of February, delivered in good order to the Charlotte & Co-

lumbia Rail-road, it being next on the most direct line of common carriers for transportation of goods from Raleigh to Monroe. The bale never reached its destination, but was lost somewhere on the route between Charlotte and Monroe. Upon this evidence issues were submitted to the jury : (1.) Did the defendant make-a special contract with the plaintiff to transport the bale from Raleigh to Monroe ? (2.) Was the bale lost on the route ? (3.) What was its value ? The answer to the two first issues was in the affirm-ative, and damages were assessed under the last issue.

The defendant however contended that there was no evidence to go to the jury that the defendant's agent made any special contract to transport beyond the terminus of its own road, and if any such was made, it was *ultra vires*, unauthorized and void ; and that having safely carried the goods to Charlotte, and then, as forwarding agent, placed them in possession of the Charlotte & Columbia Rail-road, the defendant had fully discharged its obligations to the plaintiff.

The Court instructed the jury that the defendant had power under its charter to make a special contract to convey to Monroe, and there was evidence to be considered by the jury that the defendant had entered into such special contract. The jury under these instructions found for the plaintiff, (as above.) Judgment. Appeal by defendant.

*Messrs. Merrimon, Fuller & Ashe,* for plaintiff.
*Messrs. D. G. Dowle* and *J. B. Batchelor,* for defendant.

SMITH, C. J. (After stating the case as above.) Two questions are presented upon this statement of facts for our determination :—

I. Has the defendant legal capacity to enter into a contract for the transportation of goods over its road and to *places beyond* and *outside the limits of the State* ?

PHILLIPS *v.* N. C. R. R. Co.

We hold that a Rail-road not disabled by the provisions of the Act of incorporation, is competent to make such contract and assume the responsibility of a common carrier over the entire route, from the place of receiving to that of the delivery of freight. This power is necessary to the usefulness of roads and the convenience and security of the public. In such case the owner can recover upon the contract for the loss or injury of his goods, and the contracting corporation incurring loss from the misconduct or negligence of the carrier into whose custody on the route they have passed, may provide by proper arrangements with the connecting lines for its own indemnity and reimbursement. This rule is eminently just and proper and calculated to facilitate and encourage arrangements among the roads by which the shipper is relieved from the necessity of ascertaining by whose default the damage is incurred. But in the absence of a special contract the liability does not extend beyond the terminus of the receiving road and the safe delivery to the other road. This doctrine is settled by numerous cases in this country which are collected and discussed by Judge Redfield in his valuable work on Railways. 2 Red. Railways, §§ 162, 163 and notes.

II. The second question we are called on to consider is, was there any evidence of such special contract to go to the jury?

The contract of the defendant is contained in the bill of lading or receipt which the defendant's agent gave to the plaintiff when the bale was delivered. The undertaking of the defendant, as therein expressed in what appears to be a form used by the company, is to convey and deliver to a station, the blank left for designating, which has not been filled. The conversation deposed to by the plaintiff as having taken place between the agent and himself, is entirely consistent with a contract to convey over his own road only, and but

expresses the agent's confidence that the goods would pass safely over the entire route and meet the plaintiff at Monroe. If admissible at all to affect a written contract contained in the receipt, it furnishes no ground upon which a jury was authorized to infer a special contract, fraught with such consequences to the company, and when it does not appear that any arrangements for continuous transportation over the route had been made by the defendant with the other lines, whose co-operation was necessary for the safe transmission of goods to a place so remote. And it will be noticed that the bale would have to pass through four States, besides those in which are the termini of the route of transportation.

As the subject is of great public importance, and the obligations imposed upon common carriers, when freight is to pass over connecting lines, should be understood by them, as well as by those who may require their services, and as the result of our examination of numerous cases decided in this country, we think the following propositions may be regarded as established :—

1. Common carriers may by special contract bind themselves to convey and deliver goods to points beyond their own lines and outside the limits of the State where their roads lie.

2. Where various companies form an association and unite in making a continuous line of their respective roads and collect, either in advance at the place of receiving or at the place of delivery, the freight due for the entire route, subdividing among themselves, the receiving road becomes responsible for the default of any of the associated companies, and no special contract need be shown.

3. Where no such association exists and no special contract is made, and goods are delivered to a road for transportation over it though marked to a place beyond its terminus, the carrier discharges its duty by safely conveying

over its own road, and then delivering to the next connecting road in the direct and usual line of common carriers towards the point of ultimate destination.   2 Redfield *supra*; *Nashua Stock Co.* v. *W. & N. R. R. Co.*, 48 N. H. 339 ; 2 Redfield Am. Railway Cases 316 ; *Dixon* v. *R. & D. R. R. Co.*, 74 N. C. 538 ; *Laughlin* v. *Chi. & N. W. R. R. Co.*, 28 Wis. 204.

There is error.   A new trial must be granted.

PER CURIAM.                              *Venire de novo.*