*J. VAN LINDLEY v. RICHMOND & DANVILLE RAILROAD.

*Railroads—Duty of Connecting Lines—Damages for delay in shipment of freight.*

1. The defendant company gave a bill of lading to plaintiff at Greensboro, for transportation of goods *via* Charlotte to Burnsville, Ala., in which it was stipulated that the same are to be transported and delivered to the agents of connecting roads, and by them to the next connecting road, until the goods shall have reached the point named in the receipt, assuming no other responsibility for their safe carriage than may be incurred on its own road or at its own stations. The goods, on arrival at Charlotte, were delivered to the Charlotte, Columbia & Augusta road, and delayed in reaching the point of final delivery beyond the usual time required in transportation; *Held*, in an action by plaintiff for damages caused by the delay, (1) That the defendant, having the control of and operating the C., C. & A. road itself, received the goods at Charlotte, and is liable to the plaintiff, in the absence of proof to show that the detention of the goods occurred beyond the southern terminus of the last mentioned road. (2) The duty of safe carriage attaches as the goods pass into the custody of each company, and ceases only when they are safely delivered to its successor.

2. The measure of damages occasioned by delay in shipment of goods, where the carrier is not informed of the special circumstances causing the loss of the plaintiff's contracts with others, is the difference between their market value at the time they ought to have been delivered, and the time they were in fact delivered, if in equally good condition; and if not, the damages should be increased to the extent of the deterioration resulting from the delay.

3. The verdict as to damages only is set aside and that issue reopened to the end that an inquiry thereof may be made in the court below, according to the rule above announced.

(*Phillips* v. *R. R. Co.*, 78 N. C., 294; *Dixon* v. *R. R. Co.*, 74 N. C., 538; *Mace* v. *Ramsey, Ib.*, 11; *Burton* v. *R. R. Co.*, 84 N. C., 192, cited and aproved).

CIVIL ACTION tried at July Special Term, 1882, of GUILFORD Superior Court, before *Gilliam, J.*

Defendant appealed.

---

*Mr. Justice RUFFIN did not sit on the hearing of this case.

LINDLEY *v.* R. R. Co.

*Messrs. Scott & Caldwell,* for plaintiff.

*Messrs. D. Schenck, J. N. Staples* and *Dillard & Morehead,* for defendant.

SMITH, C. J. The plaintiff, Lindley, on behalf of his firm, on October 28, 1880, directed the defendant's agent at Greensboro, using for that purpose a printed form prepared by the company and addressed to "the agent of the Richmond & Danville railroad company" at that place, to transport three boxes of fruit trees, thence to Burnsville, Alabama, at the foot of which was a printed memorandum, "see conditions, other side."

On the reverse page are numerous printed conditions of which that numbered 12 is in these words:

"This company will not receipt for or guaranty the transportation of any article of freight beyond the point to which bill of lading is given. Goods or property consigned to any place off the company's line or road, or to any point or place beyond its termini, will be sent forward by a carrier or a freightman, when there are such, in the usual manner, the company acting for the purpose of delivering to such carrier, as the agent of the consignor or consignee, and not as carrier, they agreeing not to hold the company liable or responsible for any loss, damage or injury to the property, after the same shall have been sent from any warehouse or station of the company."

At the same time, the said agent gave a receipt, in a printed form, bearing the heading, "Piedmont Air-Line Railway," of the said goods, marked, "J. Van Lindley, Ala.. *via* Selma, Rome & Dalton R. R." as follows:

"GREENSBORO, Oct. 28th, 1880.

[No. 20.] Received from J. Van Lindley the following property in apparent good order, contents and value unknown, to be transported to Burnsville, Ala., upon the conditions endorsed

hereon," describing the articles as stated. The conditions to which reference is made are the same as those on the preceding paper.

Thereupon, at the same place and date, a bill of lading was signed by the agent and delivered to Lindley, designated at the top as a "through bill of lading," and with a similar marginal marking, as follows:

"Received of J. Van Lindley, in outward apparent good order, *inward condition of contents unknown,* and for which (viz.: *condition of contents) this company or any of its connections* to place of delivery shall not be responsible, —packages, value unknown, to be transported by the Richmond & Danville railroad company to Charlotte, thence by connecting lines to Burnsville, Ala., three boxes fruit trees, released and freight guaranteed, (the italics are in the bill) supposed to be marked and numbered, as per margin, to be transported as above specified and delivered to the agents of the connecting railroad companies or steamers, and by them to be delivered to the next connecting railroad company or steamer, until said goods or merchandise shall have reached the point named in the receipt. As the packages aforesaid must pass through the custody of several carriers, it is understood as a part of the consideration on which said packages are received, that the exceptions from liability made by such carriers respectively shall operate in the carriage of them respectively of said packages, as though inserted herein at length * * *. And it is expressly understood, that for all loss or damage occurring in the transit of said packages, the legal remedy shall be against the particular carrier in whose custody the said packages may actually be at the time of the happening thereof; it being understood that the Richmond & Danville railroad company, in receiving the said packages to be forwarded as aforesaid, assumes no other responsibility for their safety or safe carriage

than may be incurred on its own road, and it is expressly confined to the road and stations of the Richmond & Danville railroad company."

The goods were forthwith, and without delay, conveyed on the train of the next day to Charlotte, and on the 30th day of October were delivered to the Charlotte, Columbia & Augusta railroad, arriving at their destination on the 15th of November thereafter.

The Richmond & Danville, the North Carolina, and the Charlotte, Columbia & Augusta railroads, all under the control of the defendant company, constitute in their connections what is known as the Piedmont Air-Line Railway. There are three other lines of railroad to be traversed after leaving Augusta before the articles reach the place of final delivery to the consignee, and six days is the usual time required in transportation, and it was not shown on which of the roads, south of Charlotte, the default occurred. In consequence of the delay, the plaintiff's numerous contracts of sale of the trees to persons at and near Burnsville, to whom those sent were delivered on the 9th day of November, were forfeited; to obviate the losses of which, they made strenuous efforts to dispose of them to others, and, as compared to the sums to be paid under the contracts, suffered a damage of several hundred dollars.

The defendant company, under the contract expressed in the bill of lading, specifically undertakes to carry the goods over its road from Greensboro to Charlotte, and then, acting as a forwarding agent of the plaintiff, to deliver them to the next carrier on the line of transportation to the point of ultimate destination in Alabama, and the like obligation is assumed for each of the successive carriers.

This duty would in law result from an association of the companies, under a common arrangement among them to receive from each other and forward the goods on to the place of ultimate delivery, in the absence of a contract by the receiving company

itself to carry the goods over the whole route, using the succcessive lines as agencies of its own in fulfilling its stipulation. Indeed, it seems to have been doubted whether the contract for the entire transportation did not rest solely upon the receiving carrier; and, again, whether one corporation could contract to convey goods beyond the limits of the state which gave the company corporate existence. But it is now settled, in accordance with the necessities of commerce, that a receiving company may undertake to carry goods beyond the limits of its own road and of the state in which it is chartered, and assume all the responsibility incident to such undertaking; while in the absence of such contract, "it is only liable for the extent of its own route and the safe storage and delivery to the next carrier." 2 Redf. on Railways, §§ 162, 163, and notes; *Phillips* v. *R. R. Co.*, 78 N. C., 294.

The terms of the defendant's contract are plainly and distinctly defined in the words, "to be transported as above specified, and delivered to the agents of the connecting railroad companies or steamers, and by them to be delivered to the next connecting railroad or steamer, until said goods or merchandise shall have reached the point named in the receipt."

The obligation resting on each, attaches as the goods pass into its custody, and ceases only when safely carried and delivered to the successor. The defendant company, it is explicitly declared, "assumes no other responsibility for their safety or safe carriage than may be incurred on its own road, and it is expressly confined to the *roads* and *stations* of the Richmond & Danville railroad company."

Now, the Richmond & Danville railroad company control, manage and operate the three roads forming the Piedmont Air-Line Railway, and is consequently answerable for default in the corporate management of each. The freight was not strictly received on the Richmond & Danville railroad, nor conveyed over any portion of it, but it passed into the custody of the company bearing that name, and it agrees to convey over and be responsible for the safe carriage of the goods over *their North*

*Carolina railroad track*, designating it by their own name, and properly, because solely operated by it.

The clause which we have just quoted from the contract does not mean, in restricting its liability " to the roads and stations of the Richmond & Danville railroad company," to confine it to the line of road between Richmond and Danville or Greensboro, since it would in such case have contracted no obligation whatever, as no portion of it was to be traversed; nor was it intended to exclude the defendant, as managing and operating also the Charlotte, Columbia & Augusta railroad, from its proper responsibility as a carrier over that road.   Indeed, such a contract, if made, would be in effect to absolve the defendant company from all liability for negligence in carrying the goods over that portion of the route, and would be utterly forbidden by public policy, and void.   The defendant company, then, as representing and operating the line of the Charlotte, Columbia & Augusta railroad in the place of that corporation, receive the goods at Charlotte in due time, and fifteen days thence elapse before they reach the consignee at Burnsville, in a damaged condition; and there is no explanation as to how or where the needless detention occurred, nor upon which of the roads on the route the culpability rests therefor.

In our opinion, the defendant company, in the absence of such evidence, as representing the last company whose road is under its control, in the course of transmission, must be held responsible for the injury suffered by reason of the delay.

"It seems to be regarded as settled," says Judge REDFIELD, "that the persons or corporation who come into the use of a railway company's powers and privileges are liable for their own acts while continuing such use, and also for the continuance, permissively, of any wrong which had been perpetrated by such company upon land-owners or others, by means of permanent erections, which still remain in the use of the successors." § 145, par. 2.

And so the non-delivery, or delivery in bad condition by the last of the lines, connecting with the defendant, by which the goods ought to have been carried after they left defendant's hands, is *prima facie* evidence of default in the defendant. Abb. Trial Evi., 571 ; *Laughlin* v. *R. R. Co.*, 28 Wis., 204 (9 Amer. Rep., 493); *Dixon* v. *R. R. Co.*, 74 N. C., 538.

But we think there is error in the rule laid down by the court for estimating the damages of the plaintiff, which was, in substance, the loss of the fruits of the several contracts with purchasers in consequence of their inability to make deliveries in time.

In *Horne* v. *Mid. Rail. Co.*, the plaintiffs had made a contract to deliver shoes for the use of the French army at a very high price, and at a fixed time. Information was given the defendant of the time of contract-delivery, but not of the special nature of the contract. The delay in transportation prevented a compliance with the terms and the contract was lost. It was held that the defendant was not liable for the difference between the ordinary market value of the shoes and the contract price—not having been informed of the special circumstances that led to the loss. L. R., 7, C. P., 583, affirmed in L. R., 8, C. P., 131. In this case the judge said: "There must, if it be sought to charge the carrier with consequences so onerous, be distinct evidence that he had notice of the facts, *and assented to accept the contract on those terms.*" Wood's Mayne on Damages, §§ 34, 38, 41.

In *Mace* v. *Ramsey*, 74 N. C., 11, the contract, for violating which the action was brought, was for the construction of a boat to be used for the accommodation of persons expected on an excursion train, and the plaintiff engaged this boat and passengers to fill it. The boat was not built in time, and consequently the fares of the passengers engaged were lost. It was declared that, as this contract was for a specific occasion and purpose, and

the damage immediately and necessarily follows the breach, it was reasonably contemplated by the parties and could be recovered.

The true measure of the damages in the present contract, in the absence of any information to quicken the diligence of the carrier and enable him by greater activity to avert the loss, is the difference between the market value of the goods at the time when they ought to have been delivered and were in fact delivered, if in equally good condition; and if not, with an increase to the extent of the deterioration resulting from the unnecessary delay in forwarding.

Following the practice pursued in *Burton* v. *R. R. Co.*, 84 N. C., 192, we re-open the issue as to damages, and remand the case to the end that an inquiry thereof be made in the court below. The appellant will recover the costs of the appeal. Let this be certified, &c.

PER CURIAM.                    Judgment accordingly.