THOMAS J. JONES v. VIRGINIA B. SWEPSON, Executrix of GEO. W. SWEPSON, et al.

*New Trial—Excusable Negligence—Issues—Affidavits.*

1. A new trial awarded by the Supreme Court, re-opens the controversy for the admission of any evidence that is itself competent, and which, if offered at the first trial, should have been received, and this equally applies to cases when the facts are to be passed on by the Judge instead of a jury.

2. This rule does not apply to those cases, where of several issues, severable in their relations to each other, an error enters into one, which in no wise affects the others, when a new trial may be granted on that issue alone, nor does it apply where some essential issue in controversy, necessary to be determined before final judgment, has not been passed upon, when such issue may be eliminated and sent down for trial.

3. In hearing motions to set aside judgments for surprise, &c., there is no rule requiring the affidavits to be filed before the hearing of the motion is entered on.

4. In an application to set aside a judgment for surprise, &c., there was an appeal to this Court, where the judgment was reversed and further proceedings ordered. On the trial in the Court below, on the hearing, the defendant offered an additional affidavit, which was rejected by the Court; *It was held*, to be error, as the trial was *de novo*, and the parties had the right in law to offer any competent evidence, whether offered on the previous trial or not.

(*Burton* v. *The Railroad Co.*, 84 N. C., 193; *Lindley* v. *The Railroad Co.*, 88 N. C., 547; *Roberts* v. *The Railroad Co.*, *Ibid.*, 560; *Allen* v. *Baker*, 86 N. C·, 91, cited and approved).

MOTION to set aside a judgment for surprise, &c., heard before *MacRae, Judge*, at November Civil Term, 1885, of the Superior Court of CUMBERLAND county.

The plaintiff recovered judgment against the testator of the defendant Virginia B. Swepson, for want of an answer, at May Term, 1877, of Cumberland Superior Court. The defendant thereafter caused to be served on the plaintiff, a notice in writing, in form as follows:

THOMAS J. JONES,  
  *against*      } Motion to set aside judgment.  
GEORGE W. SWEPSON and  
MILTON S. LITTLEFIELD.

Thomas J. Jones, the plaintiff in the above entitled action, is hereby notified, that on the 27th day of November, A. D. 1877,

· or as soon thereafter as counsel can be heard, I shall move the Superior Court of Cumberland county, *Judge Seymour* presiding, to vacate and set aside the judgment rendered against me by said Court, at May Term, 1877, in said case.

GEORGE W. SWEPSON.

The motion was heard and allowed, and the plaintiff appealed. Conflicting affidavits were sent up with the transcript, and without an ascertainment of the facts by the Judge who rendered the judgment.   In considering the case and reversing the judgment, this language is used in the opinion: "It was the duty of the Judge to find and set forth upon the record the facts upon which he grounded his judgment.   Whether a given state of facts constitutes excusable neglect, is a question of fact."   And again, "This is as well settled as any proposition can be, by many concurring decisions of this Court," citing several cases.   See the same case, 79 N. C., 510.

The motion was again heard, at November Civil Term, 1885, upon the affidavits filed, when the plaintiff's counsel asked that a supplemental affidavit from the defendant, George W. Swepson, filed in 1879, before his death, be stricken from the file, on the ground that it "had been filed, without leave of the Court, and since the former hearing of the motion."   This was denied, because, in the words of the Judge, "it appeared that this supplemental affidavit had been on file since 1879, and no motion had been made to strike it out, until the present hearing."   The defendant's counsel then proposed to read in evidence an additional affidavit of T. C. Fuller, counsel for the defendant when the impeached judgment was recovered, made on the same day, and of which, and an intention to use it, information was given to the plaintiff's counsel before the trial was entered upon, with consent to a continuance, if desired, for the purpose of answering it.   It was offered after the reading of the other affidavits, and objected to by the plaintiff, for "that he had no notice of it, nor opportunity to answer it before the hearing."

The objection was sustained and evidence excluded. To this ruling the present defendant excepts. We reproduce the affidavit only to show its materiality and pertinency to the inquiry then before the Court.

"Thomas C. Fuller, being duly sworn, says that it is not true that the plaintiff ever notified him of the purpose to repudiate his covenant, nor to sue the defendant Swepson, nor to press his suit as to him, nor does affiant believe, and for the following reasons, that he gave such notice to said Swepson. After the execution and the delivering of the said covenant, affiant continued for several years to act as the plaintiff's counsel in the action, it being their purpose to prosecute it as to the defendant Littlefield.

"That for this purpose, and for this alone, the case was kept upon the docket, and the only reason why it it was not dimissed of record as to the said Swepson, was that it was believed by the plaintiff and his attorney, that to have the cause regularly constituted in Court, by actual personal service of the summons upon one of the defendants, would more certainly give the Court jurisdiction as to defendant Littlefield, whom it was proposed to make a party by mere publication, as he resided out of the State. That during these years, while affiant was still acting as his attorney, he had divers interviews with the plaintiff with reference to the matter, and never did he at any time, express the least dissatisfaction with his settlement with the defendant Swepson. On the contrary, he frequently inquired of this affiant, as to the chances of his getting money from Florida, or from Littlefield, in pursuance of said settlement, mentioning the same as still subsisting, and at all times declaring that he sought no redress against the said Swepson, but regarded this cause, as to him, terminated. That affiant was present at a term of this Court, in the early part of the year 1876, when the propriety of proceeding to make Littlefield a party by publication was again discussed between the plaintiff, and his other attorney, the late B. Fuller, and this affiant. That it was then deemed best, that

Littlefield should not know of the settlement made with Swepson, or of the purpose not to sue him further, and in order that he might not be apprised thereof, it was agreed that affiant should mark his name as the attorney of the defendant Swepson. That this was done at that term, in the absence of said Swepson, and without his knowledge, and only for what was supposed to be the plaintiff's advantage, he at this time recognizing his covenant with Swepson as still binding on him. That affiant, as attorney of the plaintiff, always assured the said Swepson, that he would see that no harm should come to him by reason of the continuance of the cause on the docket, and told him that it was not necessary for him to retain counsel in this cause, and that after affiant had marked his name upon the docket as his counsel, whereby he, in effect, became the mutual counsel of the parties, he repeated his assurance to him, and affiant has no doubt that it was in consequence of this repeated assurance, that the said Swepson failed and neglected to retain counsel to represent him in this action.

T. C. FULLER."

Upon the evidence, the Judge found the facts to be as follows:

"I. This action was brought to Spring Term, 1873, of Cumberland Superior Court, the summons being issued at the instance of B. & T. C. Fuller, as plaintiff's attorneys, upon a draft for $25,000.00, drawn by G. W. Swepson on M. S. Littlefield, in favor of A. J. Jones, dated November 8th, 1869, and payable ninety days after date, accepted by M. S. Littlefield, and endorsed by A. J. Jones.

"II. On the 10th of June, 1873, the plaintiff and G. W. Swepson compromised the suit, and plaintiff gave to said G. W. Swepson a receipt as follows:

"Received of G. W. Swepson, one thousand dollars, in full of cash payment of the sum agreed upon, in the compromise of a

certain draft of said Swepson on M. S. Littlefild, payable to A. J. Jones, and by him transferred to me, and on which I have commenced a suit. The agreement for compromise is placed in the hands of Hon. Thomas C. Fuller, and is now held by him.

(Signed)          THOMAS J. JONES."

Raleigh, N. C., this June 10th, 1873.

The agreement for compromise referred to in the above recept, was as follows:

"Thomas J. Jones and George W. Swepson have this day agreed together as follows : Thomas J. Jones does hereby agree to forbear and not to prosecute or sue any further, so far as George W. Swepson is liable or concerned, on a draft now in the hands of B. & T. C. Fuller, attorneys, in suit in Cumberland Superior Court as follows: Draft for $25,000.00, drawn by George W. Swepson on M. S. Littlefield, and by said Littlefield accepted, payable to the order of A. J. Jones, and by him assigned to Thomas J. Jones.

"The condition of the above covenant and agreement is, that George W. Swepson pay to Thomas J. Jones, one thousand dollars ($1,000.00), and George W. Swepson further agrees to pay Thomas J. Jones, through Thomas C. Fuller, as soon as received by said Fuller, two thousand dollars, out of any money realized from railroad bonds in Florida, or from M. S. Littlefield, and if nothing is collected out of railroad bonds or M. S. Littlefield, then the one thousand dollars is in full satisfaction and payment for said covenant.      THOMAS J. JONES, [Seal.]

Witness T. C. FULLER.      G. W. SWEPSON, [Seal.]"

"The $1,000 is all the plaintiff has received on the draft or on the compromise. Neither said Swepson nor Thomas C. Fuller have, since said agreement, realized any money from railroad bonds in Florida, nor from M. S. Littlefield, and said Swepson was diligent in his efforts to collect and realize money from said sources.

"The complaint was filed at Spring Term, 1873, and signed "Fuller, attorney for plaintiff," in the handwriting of B. Fuller, Esq. Thomas C. Fuller, Esq., became the general attorney for G. W. Swepson, and was released from further professional obligations to plaintiff, and at January Term, 1876, of said Court, entered an appearance for G. W. Swepson, by writing T. C. Fuller for —— opposite the name of said Swepson in said suit upon the docket, and B. Fuller and J. W. Hinsdale, Esqs., thereafter represented the plaintiff, and at May Term, 1877, of said Court, judgment was rendered against G. W. Swepson for want of an answer or demurrer, in the absence of said Swepson and of his attorney.

"Notice of motion to set aside the judgment was served on the plaintiff, October 9th, 1877. The appearance being entered for said Swepson, at January Term, 1876, and not before, and it being alleged by plaintiff that he gave notice to said Swepson, that he intended to press his said action. Service of said notice being denied by said Swepson, it is found as a fact, that notice was given by plaintiff to defendant, G. W. Swepson, of plaintiff's intention to press for judgment, prior to January Term, 1876, and that up to the time of said notice, the said Swepson, relying upon the compromise and covenant, took no steps to defend the action. No defence to the action is set forth in the defendant's notice or affidavits, other than that which is based upon the terms of the compromise and covenant.

"It does not appear that said Swepson ever communicated to his attorney any other defence to the action.

"Upon the foregoing facts found, it is considered by the Court, that the defendant is not entitled to relief under §274 of the Code.

"The plaintiff offering now to credit said judgment with the one thousand dollars, paid to him by said Swepson, on June 10, 1873, the said judgment must be credited with said sum, at said date. And the motion to vacate is denied, at defendant's cost, and the stay of proceedings heretofore granted is dissolved."

45

From which order the defendant Swepson, as executrix, appeals to the Supreme Court.

*Mr. John Devereux, Jr.,* (*Mr. Geo. V. Strong* was with him), for the plaintiff.

*Messrs. Thos. Ruffin, W. P. Bynum* and *Edward C. Smith,* (*Messrs. T. C. Fuller, Geo. H. Snow* and *Jno. W. Graham* were with them on the brief), for the defendants.

SMITH, C. J. (after stating the facts). We think it clear, that a new trial awarded for some vitiating illegal ruling, which may be reasonably supposed to have influenced the verdict, re-opens the controversy for the admission of any evidence that is itself competent, and ought to have been received, if offered, at the first trial. This is equally true when the Judge assumes the function of passing upon the evidence, and determining the facts upon which the judgment is grounded. We do not of course refer to those exceptional cases, where of several issues, severable in their relations, an infecting error enters into the finding of one, and the new trial is confined to that issue, as in *Burton* v. *Railroad,* 84 N. C., 193; *Lindley* v. *Railroad,* 88 N. C., 547; *Roberts* v. *Railroad,* Ibid., 560; nor to cases wherein some of the essential matters in controversy, necessary to be determined before final judgment, have not been passed on, and the verdict is insufficient, as in *Allen* v. *Baker,* 86 N. C., 91.

There were no facts found in the former appeal, upon which the order vacating the judgment could be seen to have been founded, and the appellate Court, could not consequently decide upon the correctness of that ruling. The motion when re-heard, stood upon the same ground as if an entire verdict had been set aside, and the trial is of necessity *de novo.* There had been no fact determined, and the issue before the Judge included all such facts as were required in deciding upon the merits of the application, and was open to any evidence, legally admissible, which either party might be able to adduce, in conformity with the

practice. In jury trials, the litigants introduce any proofs they may have, in proper order, until all are heard, and may, with leave of the Court, offer further proofs after the testimony has been closed.

Neither is required in advance, to communicate to the other that which he expects to introduce. Why should a different rule prevail when the Court is called on to perform a similar service? As affidavits are *ex parte* and no opportunity is offered for cross examination, there is a propriety in affording counsel an opportunity for examining such as may be offered against him, before trial, so that he may controvert the new matter, by adversary evidence, and when this is not done, it may present a case of surprise, authorizing the arrest of further proceedings, until the new evidence can be met. We know of no rule regulating the hearing of motions such as the present, which requires the filing of affidavits before the trial is entered upon, and their rejection when they are not. There is, of course, a discretion reposed in the Judge, which may warrant his rejection of testimony in this *ex parte* form, when inopportunely offered out of the regular course of proceeding, just as he may, under such circumstances permit it. We do not abridge his exercise of discretion in these cases. The present case is not of this kind. Notice of the affidavit was given in advance, and it does not appear that the plaintiff or his counsel were refused an opportunity of seeing it, or even that they wished to know what it contained. No unfair advantage was taken, and the plaintiff assented to the hearing, with the knowledge that the affidavit would be offered.

It is true, the opposition to its admission is put by the plaintiff's counsel, upon the general ground " that he had no notice of it, nor opportunity to answer it before the hearing," and the record says the objections were sustained. If by this is meant that sufficient time had not been given to prepare the answering evidence, as we have already said, the objection is untenable in law, and could have been removed by a postponement.

Another portion of the record seems to imply the ruling out of the affidavit for a different reason. The plaintiff's counsel seemed to have entertained the erroneous idea, that no testimony could be heard, but such as was before the Judge when the motion was first heard and allowed. This is indicated in the application for striking out the second, or, as it is called, *supplemental* affidavit of the deceased, though on file for six years, because the leave of the Court was not first obtained, as necessary to its admission. And the ruling seems, in some degree, to countenance the suggestion, since the objection is overruled, not for its intrinsic invalidity, but because the affidavit had so long remained on file, and no motion of such nature had before been made to this effect. Then immediately appears the objection to the reading of the refused affidavit, and the ruling sustaining it. It would seem that the implication found in the previous ruling, was acted on as a sufficient reason for rejecting the other. If this be the interpretation of the record or case, the action of the Court proceeds upon an underlying misconception of the law and practice in disallowing the evidence. And in the other view of the case, there was error in the ruling, which entitles the appellant to another hearing. It is not an authorized act of discretion, but a denial to the defendant of a legal right.

We are not prepared to say, even upon the findings, that the case is not within the purview of §274 of The Code, and that the ruling of the Judge in this regard is correct. But we express no opinion upon the point, as the facts developed upon the evidence, and found at the next trial, may be entirely different.

There is error in the ruling out of the affidavit, as a matter of law, and there must be another trial. It is so adjudged.

Error.                                                        Reversed.