HARPER FURNITURE COMPANY v. SOUTHERN EXPRESS
COMPANY.

(Filed 22 May, 1907).

1. **Evidence—Judicial Notice.**—The courts will take judicial notice of prominent towns in this State, especially county seats, their accessibility by railroads connecting them with trunk lines of the country; also of the distance of prominent business centers of other States, their accessibility by railway, and the time between them by the usual routes and methods, to the extent that the facts are sufficiently notorious to make their assumption safe and proper.

(*Walker v. Railroad*, 137 N. C., 163, cited and distinguished).

2. **Same.**—When it appears that goods shipped by express from the city of Erie, Pa., to the town of Lenoir, N. C., have been on the road for a period of fourteen days, the courts will take judicial notice of the time required for shipment between the two points so far as to hold that there has been a *prima facie* wrongful or negligent breach of the contract of carriage.

3. **Common Carriers — Negligence — Presumptions.** — When there arises a presumption of actionable negligence against one of several connecting lines of carriers by reason of a wrongful delay of transportation of goods, such presumption is against any one of them in whose custody the goods are shown to have been, after the delay occurred, and the burden of proof is upon it to rebut the presumption.

(The difference between *"prima facie,"* "presumptions" and "burden of the issue," distinguished).

CIVIL ACTION to recover damages for delay in shipment of goods by express, tried before *Bryan, J.,* and a jury, at November Term, 1906, Superior Court of CALDWELL County. From judgment of nonsuit plaintiff appealed.

G. F. Harper, for plaintiff, and being the only witness examined, testified as follows:

"I am a member of the firm trading under the name of The Harper Furniture Company, and am general manager of the same. On 28 October, 1905, I received a through bill

of lading by mail from Erie, Pa., to Lenoir, N. C., issued by
the Adams Express Company, as shown on the face of the
bill, and which showed that on 26 October, 1905, a certain
engine shaft and crank had been delivered to the said Adams
Express Company by the Erie City Iron Works, of the said
city of Erie, Pa., and from which the plaintiff had ordered
the said shaft and crank a few days before.  Said bill of
lading showed on its face that the shaft was to be delivered in
Lenoir, N. C., by the company issuing it and its connecting
lines.  The shaft did not reach Lenoir until 9 November,
1905.  Upon its arrival in Lenoir it was delivered to me by
the agent of the defendant Southern Express Company, and
I paid him the sum of $26.50 as the freight charges for the
transportation over the entire line from Erie to Lenoir.
During all the time it was on the road, and before, our fac-
tory was standing idle, as we could not turn a wheel without
the shaft.  We made, both before the shaft broke and after
the repairs were made, $30 per day net profit on the output
of the mill, and we could have made the same had we re-
ceived the shaft in proper time.  We were forced, also, to
turn down orders which we could have filled at a profit of
$300 had the machinery been received in proper time."

Cross-examined:

"I have no means of knowing where the delay occurred—
whether on the line of the initial company or on that of the
defendant company.  I do not know whether there were traffic
arrangements between the two companies further than is
shown by the bill of lading, which was a through bill from
Erie to Lenoir, and from the fact that I paid the freight for
transportation to the agent of the defendant company at
Lenoir, N. C."

At the close of the testimony defendant moved to dismiss
the cause as on judgment of nonsuit.  The motion was allowed,
and plaintiff excepted and appealed.

*Jones & Whisnant* for plaintiff.
*W. C. Newland* and *John A. Barringer* for defendant.

HOKE, J., after stating the case: It is said by McKelvey, in his work on Evidence, that there is a class of facts of which a court may take judicial notice in its sound legal discretion, and supporting them is the single principle of common notoriety, the vital question being whether sufficient notoriety attaches to any particular fact as to make it safe and proper to assume its existence without proof. McKelvey on Evidence, pp. 33 and 34. Speaking further of this class of facts, the same author says: "In every case the particular circumstances must govern, and no general rule can be laid down. The decisions in particular cases are very useful, as they serve to furnish illustrations by way of analogy. They are not useful as precedents, inasmuch as the same facts may, at a different time and under different circumstances, be entitled to different treatment."

Speaking to the same principle, Professor Wigmore, in his work on Evidence, sec. 2580: "Applying the same general principle (as to judicial notice), especially in regard to the element of notoriousness, courts are found noticing from time to time a varied array of unquestionable facts ranging throughout the data of commerce, industry, history and natural science. It is unprofitable as well as impracticable to seek to connect them by generalities and distinctions, for the notoriousness of a truth varies with differences of time and place. It is even erroneous in many if not most instances to regard them as precedents. It is the spirit and example of the rulings, rather than their precise tenor, that is to be useful in guidance." And in section 2581: "Among the common instances under this miscellaneous class are the facts of time, season and distance; though here, also, the quality of notoriousness will naturally vary with the place

and epoch as well as with the greater and less accuracy involved in the facts desired to be noticed."

Accordingly, it is generally held that the courts will take judicial notice of the placing of the prominent towns within their jurisdiction, and especially of county sites and their accessibility by railroads connecting them with the trunk lines of the country; and there is well-considered authority to the effect that courts may also take such notice of the distance to prominent business centers of other States, their accessibility by railway, and the time between them by the usual routes and methods of travel, to the extent that these facts are sufficiently notorious as to make their assumption safe and proper. *Life Insurance Co. v. Robinson,* 58 Fed., 723; *Williams v. Brown,* 65 N. Y. Supp., 1049; *Morgan v. Farell,* 58 Conn., 413; *Pearce v. Langfit,* 101 Pa. St., 507, 17 Amer. and Eng. Enc., 905; 16 Cyc., 861; Greenleaf on Evidence, vol. 1, sec. 5; Wharton on Evidence, vol. 1, sec. 340. And with this limitation, judicial notice may also be taken of the general business methods of railway and other well-known or *quasi* public corporations when these methods are universally practised or commonly known to exist. Wigmore on Evidence, sec. 2580; McKelvey on Evidence, 1032; *Bank v. Hall,* 83 N. Y., 338; *Railroad v. Miller,* 25 Mich., 275.

The present case affords an apt illustration of the rule and the limitation suggested, and the doctrine has been stated at some length in order that the parties may be correctly guided in its application on the further trial of the cause. The Court can safely assume, as a matter of common knowledge, that the railroad lines connect Lenoir with the principal trunk lines leading north; that the city of Erie, Pa., is situated on Lake Erie, in said State, and accessible by railway. We can safely assume, further, that express companies are agencies organized for the purpose, at a higher price, of pro-

viding greater security and dispatch in the delivery of freight, and that they select and secure for their business, as a rule, the most desirable and direct routes. The Court taking judicial notice of these facts, it must follow, as a fair and reasonable inference, that fourteen days is too long a time for the transportation of freight by express between the two points— Lenoir, N. C., and Erie, Pa.—and that, *prima facie,* there has been actionable negligence in the performance of the contract of carriage. While, however, the Court may assume the general facts suggested so as to permit the inference that in the absence of satisfactory explanation the time taken has been too long between the two points, it would not follow that the Court should go further and take judicial cognizance of additional facts which would be required to determine how much too long it was. This would likely involve the existence of further facts entirely too minute for the application of the doctrine, such as the route selected, the number and schedule of the trains, etc. "The principle of judicial notice is largely one of common sense," says McKelvey, *supra.* In the one case the general facts could be assumed because sufficiently notorious to make it safe and proper to do so. In the other it would not be safe and might lead to an erroneous conclusion, working harm to the litigant; and, therefore, if, in the further trial of the cause, it should become desirable to establish more accurately the exact *quantum* of wrongful delay, it would, no doubt, be proper that proof should be offered.

There is nothing here said which militates in any way against the intimation of the Court in *Walker v. Railroad,* 137 N. C., 163, as to the requirement of proof, on the facts there presented. The question to which that intimation was addressed was in reference to the distance and time required for a freight train from Cumnock, N. C., to Graham, N. C., via Greensboro. Between these places there were fourteen

stations, and the point involved was the exact *quantum* of delay in delivery of the goods, with a view of fixing the amount of a penalty imposed by statute for each day's delay after a given time, allowed as free time. The accuracy required in such an investigation would make it entirely unsafe for a court to act without proof, and the case clearly comes within the limitation suggested that a court will only take judicial notice of such facts as are sufficiently notorious to make it safe and proper to do so.

The facts testified to, and those of which the Court takes judicial cognizance, having established that there arises a presumption of actionable negligence against some one by reason of wrongful delay, our decisions are to the effect that on such facts there is also a presumption that the cause of action exists against defendant, in whose custody the goods are shown to have been after the delay occurred.

It may be well to note here that in using the terms *prima facie* and presumption the terms do not import that the burden of the issue is changed, but that on the facts indicated the plaintiff is entitled to have his cause submitted to the jury under a proper charge as to existence or non-existence and the effect of any presumption which may attach, as indicated in the cases of *Womble v. Grocery Co.,* 135 N. C., 475; *Stewart v. Carpet Co.,* 138 N. C., 60; *Overcash v. Street Railway,* at present term.

To resume the line of principle discussion, the decisions referred to have established that when there has been a contract for continuous carriage of goods over a line composed of different and connecting carriers, and the goods are shown to have passed, under such contract, into the hands of the initial carrier in good shape and condition, the shipper will have a *prima facie* right of action against any one of the carriers in whose custody the goods are proved to have been in a damaged condition. This was held as to initial carrier in

*Meredith v. Railway,* 137 N. C., 479. And as to the ultimate or intervening carrier, in *Mitchell v. Railway,* 124 N. C., 236, the general principle being stated in the last case, as follows: "Among connecting lines of common carriers the one in whose hands the goods are found damaged is presumed to have caused the damage, and the burden is on it to rebut the presumption."

It is true that in the cases cited the injury complained of was wrongful damage to the goods, and here the negligence charged for is wrongful delay; but the same reasons for establishing the principle of proof in the one case exists with equal force in the other.

As said by *Judge Poland* in 32 Vt., 667, cited with approval in *Meredith's case, supra:* "The ruling is placed upon the ground that this 'is all the proof the nature of the case permits to plaintiff, and that proof of delivery by defendant to the next road was a matter peculiarly within the power of defendant, and not at all in the power of the plaintiff." And in *Mitchell's case, supra,* the ruling is referred to the same principle: "It is a principle of law when a particular fact, necessary to be proved, rests peculiarly within the knowledge of one of the parties, upon him rests the burden of proof." And in 6 Amer. and Eng. Enc., 609, it is said that "The liability of the initial carrier for delay is governed by the same rules which determine its liability for loss or injury of goods shipped to a point beyond its line."

There would seem to be evidence here that each one of the connecting carriers in this case might be jointly liable for the default of the others; but we forbear giving definite expression on this question until the facts can be more fully developed in the further trial of the cause. Decisions which may be helpful in determining this question will be found in *Rocky Mount Mills v. Railway,* 119 N. C., 694; *Lindley v. Railway,* 88 N. C., 547; *Phillips v. Railway,* 78 N. C.,

294; *Bradford v. Railway,* 7 Richardson S. C., 201; *Holliday v. Railway,* 74 Mo., 159; *Railway v. Weakly,* 50 Ark., 397.

We hold that there was error in dismissing the action as on judgment of nonsuit, and this will be certified, that the order to that effect may be set aside and the trial proceeded with.

Reversed.

WALKER, J., concurring: There is evidence which I think tended to show that the iron shaft was not transported from Erie, Pa., to Lenoir, N. C., with due diligence, and this was sufficient to carry the case to the jury without the necessity of taking judicial notice, even generally, of the distance between the two places and the time necessary for transportation, with a view of deciding that the time consumed was unreasonable and the delay therefore negligent, although judicial notice is not taken of the exact time required. Having some doubt as to whether we are authorized to determine the fact of unreasonable delay, under the circumstances of this case, by invoking the doctrine of judicial notice, I express no opinion on that point, but confine my assent to the conclusion of the Court only, that the nonsuit was improper, and for the reason I have already stated.

I do not mean to say that the doctrine of judicial notice is not correctly stated and applied by the Court, but that I prefer to rest my opinion of the case upon the other ground, which I am quite sure is a safe one, and especially as in either view a *prima facie* case is made for the plaintiff in the sense that the burden of proof (and not of the issue) is shifted to the defendant.