BREVARD LAND AND TIMBER COMPANY v. C. S. KINSLAND.

(Filed 20 December, 1910.)

1. Courts—Treaties—Grants—Official Boundaries—Judicial Notice—Evidence.

The Meigs and Freeman line having been run by the Federal Government in obedience to the treaty power vested in it by the Constitution of the United States, and expressly recognized by the Legislature of this State, the courts will take judicial notice of its existence; but its physical location is the subject-matter of proof.

2. Deeds and Conveyances—State Grants—Official Boundaries—Evidence Insufficient.

The plaintiff deraigns his title to the *locus in quo* from a grant from the State, and the question presented is whether it is situated on the west of the Meigs and Freeman line, where the lands are reserved to the Cherokee Indians under a treaty with the Federal Government, or east thereof. Defendant introduced evidence by a witness that eighty years after the running of the Meigs and Freeman line he was an employee of the Government, and that the true meridian line was used by the Government, which in the case at bar would sustain defendant's contention. On the line contended for by plaintiff was discovered marked trees and natural objects indicating a very old marking, but none on that contended for by defendant: *Held*, there was insufficient evidence to sustain the jury's finding for defendant, and a new trial is ordered.

APPEAL from *Justice, J.,* at April Term, 1910, of TRANSYL-VANIA.

This is an ejectment to try the title to the tract of land described in the complaint and for its possession, and damages for the trespass thereon. The usual issues were submitted, and

the jury found that the plaintiff was not the owner and entitled to the possession of the land described. In deraigning its title, the plaintiff offered Grant No. 230 from the State to George Latimer, dated 20 July, 1796, and connected itself with it by mesne conveyances. The defendant rested his defense upon the location of the Meigs and Freeman line, surveyed in 1802 to mark the boundary of the lands reserved to the Indians under the acts of 1788 and 1783. The trial turned upon whether the land claimed by plaintiff lay on the east or west side of that line; if west of that line, the defendant's contention was that the Latimer grant was void, as the land was not grantable; if any part of the grant lay east of that line, then the plaintiff was entitled to recover, as the evidence tended to show the trespass was committed east of that line, if it was located as contended by plaintiff. There was judgment for the defendant upon the verdict, and plaintiff appealed.

*W. W. Zachary* and *D. L. English* for plaintiff.

*Welch Galloway, Aycock & Winston,* and *Joseph B. Cheshire, Jr.,* for defendant.

MANNING, J. The decisive question presented by this appeal is the proper location of the divisional line, marking the eastern limit of the lands reserved for the Cherokee Indians in the State of North Carolina, under treaties made between the United States and the Cherokee Nation. The line is known as the Meigs and Freeman line, Meigs being a commissioner appointed by the Federal Government under the terms of the treaty with the Indians, and Freeman being the surveyor, and was run and marked in the year 1802. This line was recognized and accepted by the State of North Carolina at the session of the General Assembly in 1809, ch. 774, 2 Potter's Compilation of the Laws of North Carolina. It is therein enacted "that the land lying west of the line run by Meigs and Freeman, within the bounds of this State, shall not be subject to be entered," etc. This line having been run in obedience to the treaty power vested by the Constitution of the United States in the Federal Government, and the Legislature of this State having expressly recognized it and the fact that it was so run, the

courts must take judicial notice of its existence (*Furniture Co. v. Express Co.,* 144 N. C., 639; *S. v. R. R.,* 141 N. C., 846); but its physical location must remain the subject-matter of proof. The great advantage of its uniform actual physical location, of course, is obvious, as a large number of titles are determinable by it. From the best information obtainable, it follows as near a direct line as the very uneven topography of the country through which it passes will admit. Its termini are very well established, one being where Hawkins' line crosses the Smoky Mountains, and the other being at or near Ellicott's Rock on the dividing line between North and South Carolina. The evidence offered at the trial so located the line.

Assuming, as we must from the records accessible to us and considered by this Court in *Brown v. Brown,* 103 N. C., 213; *s. c.,* on rehearing, 103 N. C., 221, and *Brown v. Brown,* 106 N. C., 451, that the line called the Meigs and Freeman line was actually surveyed and marked, the only evidence offered at the trial of sufficient probative force to be submitted to the jury was of its location as contended by the plaintiff. Along this line was discovered marked trees and natural objects indicating a very old marking. The testimony of an employee of the Government that during the years 1881 and 1885, when the witness was in the service of the Government, the true meridian line was used by the Government, and that, running by the true meridian, the Meigs and Freeman line, the course called for would be located as contended by the defendant, can have no probative force when it is not shown that such was the method employed about eighty years theretofore. Along the line thus run there was no evidence of marked objects. We deem it unnecessary to rehearse the treaties and legislation resulting in the location of the divisional line, as these have been fully considered in cases cited, and in the case of *Latimer v. Poteet,* 14 Peters, 4. Locating the Meigs and Freeman line as contended by the plaintiff, the land upon which the trespass, as alleged in the complaint, was committed, was unquestionably the subject of entry and grant by the State on 20 July, 1796, as it lay east of said line.

154—6

His Honor should have given, at least in substance, the tenth special instruction requested by the plaintiff; and his refusal to do so constitutes reversible error. Having reached this conclusion, we deem it unnecessary to consider the other exceptions so ably argued before us. The plaintiff is, therefore, entitled to a new trial, and it is so ordered.

New trial.