ROCKY MOUNT MILLS v. WILMINGTON & WELDON RAIL-ROAD COMPANY AND PENNSYLVANIA RAILROAD COMPANY.

*Action for Damages—Common Carriers—Associated Lines of Transportation—Joint Liability of Members—Delay in Transportation—Measure of Damages—Province of Jury—General Appearance of Party Brought in Under Attachment Proceedings.*

1. Where a defendant, brought into court on attachment process, subsequently entered a general appearance and filed an answer to the merits, a motion to dismiss the attachment on the ground that it would not lie under the statute was properly refused as immaterial.

2. Where two or more common carriers unite in forming an association creating a through line for the transportation of freight, payment of tariff charges to be made at the beginning or end of the transportation, with through bills of lading giving the names of the traffic agents of the different lines, the freight charges to be divided according to the respective mileage of the companies, they become a co-partnership and each line is liable for any damage resulting from delay or otherwise on any part of the through line, notwithstanding a provision in the bill of lading that each company shall be liable only for loss or damage occurring on its own line.

3. In the trial of an action against a railroad company for loss occasioned by its delay in transporting machinery shipped over its line by plaintiff, which was engaged in equipping a cotton factory, it appeared that workmen employed by the plaintiff were forced to remain idle, though under pay of plaintiff ; *Held*, that the measure of plaintiff's damages was the interest on the unemployed capital, the wages paid to workmen and such other costs and expenses incurred by plaintiff in consequence of the delay.

4. Where, in the trial of an action against two railroad companies for damages for delay in transporting freight, it appeared that the contract of shipment was made with an association of freight lines of which defendants were members, and the court submitted to the jury an issue as to whether, under the contract of association, the roads over which the freight was carried were responsible for the entire obligation of the contract of carriage, the jury answered in the affirmative ; *Held*, that the error, if any, in permitting the jury to pass upon the effect of the contract, was cured by the verdict.

CIVIL ACTION, for damages for delay in delivery of freight, tried before *Hoke, J.,* and a jury, at June Term, 1896, of EDGECOMBE Superior Court.

At the call of the cause for trial the defendant, the Pennsylvania Railroad Company, moved in apt time for the dissolution of the attachment theretofore granted on the grounds stated in the motion. Before making the motion the said defendant had entered a general appearance and filed an

answer. His Honor denied the motion, holding that, the defendant having entered a general appearance, the effect thereof was to place it on the same ground as if it had been served personally with process.

The defendant, the Pennsylvania Railroad Company, excepted to the refusal of its motion.

The following were the issues submitted to the jury and the responses:

" 1. Was there an agreement between the two defendant companies, the Pennsylvania Railroad and the Wilmington & Weldon Railroad, with other associated and connecting lines of railroad, for their mutual benefit, by which was established an all rail fast through freight line from points north and east to Rocky Mount and points south, known as the Atlantic Coast Dispatch, by which the different members of the association became agents for the others to make contracts of affreightment for through freight, binding upon the members along such lines, and over such roads as the freight should be carried, and making such roads over which freight is carried responsible for the entire obligation of the contract?

" Answer, ' Yes.'

"2. Did defendant, the Pennsylvania Railroad, contract and agree with the plaintiff on February 15, 1893, to ship to plaintiff at Rocky Mount, N. C., from Lowell, Mass., the cotton machinery as alleged in complaint?

" Answer, ' Yes.'

" 3. Did defendant, the Pennsylvania Railroad, wrongfully and negligently fail to comply with this contract?

" Answer, 'Yes.'

" 4. What damage has plaintiff sustained by reason of the default on the part of defendant, the Pennsylvania Railroad Co?

" Answer, ' $771.66, with interest from the 13th of March, 1893.'

"5. Did the defendant, the Wilmington & Weldon Railroad Company, contract and agree with plaintiff on February 15, 1893, to ship to plaintiff at Rocky Mount, N. C., from Lowell, Mass., the cotton machinery as alleged in complaint?

"Answer, ' Yes.'

"6. Did the defendant, the Wilmington & Weldon Railroad, wrongfully and negligently fail to comply with this contract?

"Answer, ' Yes.'

"7. What damage has plaintiff sustained by reason of the default on part of defendant, the Wilmington & Weldon Railroad Co.?

"Answer, ' $771.66, with interest from the 13th of March, 1893.' "

The defendant excepted to the submission of the first issue.

The facts sufficiently appear in the opinion of Chief Justice FAIRCLOTH, and in the charge of his Honor, *Judge Hoke,* which was as follows:

" This is an action brought by the plaintiff, the Rocky Mount Mills v. the defendants, the Wilmington & Weldon Railroad Company and the Pennsylvania Railroad Company, to recover damages for the delayed shipment of freight from Lowell, Mass., to Rocky Mount, N. C. Plaintiff alleges these defendant roads, in connection with other lines, made a joint contract with it to ship machinery from Lowell, Mass., to Rocky Mount; that, so far as it was concerned, it was a joint contract on the part of these different companies, making each member responsible for the carrying out of the entire contract. The contract was to ship the machinery with remarkable dispatch, and that

ROCKY MOUNT MILLS *v.* RAILROAD COMPANY.

they failed to comply with their contract.    The freight was delivered in Lowell on February 15, 1893, and ought to have come to hand in four or five days, but was not received until March 12th, a delay of twenty-five days since the shipment, and causing the mills to stop and causing them damage of $1,000.

" The defendant denies any joint contract with his company making the roads jointly liable, and denies any liability for any damages beyond its own line, and denies doing any such damage as is claimed.    On these denials certain issues have been framed for the jury to pass upon.

" The first issue is whether there was a contract and arrangement between the different roads as to a fast through freight line, making each member the agent of the others, and binding them upon a contract for the through shipments of freights.    2d, Whether the Pennsylvania Road made a contract for through shipment.    3d, If the Pennsylvania Road has made any such contract, has it broken it ?    4th, If it did, what damages has the plaintiff sustained thereby ?    There are also three issues addressed to the W. & W. R. R. Co.    Did the W. & W. R. R. Co. contract for through shipment ; did it break the contract ; if so, what damages has the plaintiff sustained thereby ?

"As to the first issue :    Was there an agreement between these two different roads, with other roads and connecting lines, to establish this fast through freight route ?    The burden of these issues is upon the plaintiff.    The law requires the plaintiff, when he comes into court and complains of the defendant, to establish his allegations to the satisfaction of the jury by the greater weight of evidence, and he must establish it.    If there is any doubt as to how it was, you should find for the defendants, as the law puts the burden upon the plaintiff.

ROCKY MOUNT MILLS *v.* RAILROAD COMPANY.

" (a.) If you are satisfied from the evidence that these roads entered into an agreement between themselves and other lines for their mutual benefit, and established a through fast freight route assuring faster dispatch and charging higher rates, and each was the agent for the other to make binding contracts for through freight, and charge for freight in solid for entire distance, either at point of receipt or delivery, such an arrangement would operate to make each responsible for the other for the entire obligation or contract, unless it was restricted by something in the contract itself, and in such case the jury should answer the issue, ' Yes.'

" (b.) But if there was no such agreement, but only an association of independent lines who united for convenience of the shipper to relieve them of the necessity of reshipping at the end of each line, and had not authority given them to make any joint contract for through shipments of freight binding upon them all, you should answer the issue ' No.' Now, how will you answer the first issue? If there was anything in the contract itself to restrict their liability to defaults occurring on their own line, each road would be responsible for its own road only, and would not be responsible for the others.

" (c.) The restriction in this contract, however, so far as the evidence in the case is concerned, is only as to damage and injury to goods shipped and not for delay.

" (d.) And your response to the first issue will turn upon the fact whether or not it was an association of these roads to establish a through freight route, with power to bind each other by the contract of one for through freight, or an association for the convenience of shippers and without any such power.

" Mr. Ruffin testifies that it was an arrangement between the roads to establish through freight rates, and that Nye

was the agent for the northern and eastern section ; that
they were associated together to secure greater speed and
charge higher rates; so far as he knew, they were agent for
each other.

" (e.)  The contract upon its face is for the jury to consider
as to whether it was a through route or not.

" (f.)  (Reads heading) Joyce is one of the officers, Mayo
another; T. M. Emerson, G. F. A., is another officer, and
they have all testified by deposition in this case. This bill
of lading purports to be signed by Chas. F. Nye, who,
Ruffin says, was the Traffic Manager for Northern and
Eastern States.

" S. K. Fountain testifies that he is local agent of the W.
& W. Railroad Co., at Rocky Mount; that he has authority
and does give such through  bills of lading for the North
and East, that he collects money for through freight for
this entire line.   There is a stipulation in the original con-
tract itself that each road  is responsible for loss and dam-
ages occurring on its own road ; there is no restriction as to
delayed freight.    If I have omitted any of the evidence or
stated it different from the way you remember it, you take
your own  memory;  I  read  it  over only  to refresh your
memory : the law makes the jury judges of what witnesses
say, and, considering the evidence you must act on it as
you recall it.

" The  defendants offer the deposition of T. M. Emerson,
Traffic Manager of the Atlantic Coast Line ; and also that
of Messrs. Shipley, McCully, Hutchins and Mayo, all
officers of the different roads, Messrs. Emerson and Mayo of
the Atlantic Coast Line.

" Mr. Emerson is an officer of the W. & W. Railroad. His
deposition is sworn to and is entitled to be received by the
jury as any other evidence of a witness here in court.   He
testifies that there is no  through arrangement by which

one of the roads becomes bound for the other; that it was an association between independent lines, and each had a right to change its rates when it wanted to, and that they were associated together for the benefit of the shipper, to prevent him from having the trouble of a forwarding agent for reshipping at the end of each line; that it was not for the benefit of the roads. Prevost, an officer of the Pennsylvania Road, testifies to the same effect, and that no one has a right to make a contract to bind his road except the authorized officers of the same.

" Consider the evidence under the rules here shown, and respond to the first issue ' Yes ' or ' No ' as you find it to be.

" Having responded to the first issue, you will then proceed to consider the evidence and determine the second issue.

" Did the Pensylvania Railroad contract and agree with the plaintiff for the through shipment of the freight from Lowell, Mass., to Rocky Mount, N. C? . The first issue is addressed to the question as to whether there was a contract of the character set out between the roads themselves. This issue is on the question as to whether there was a contract between the Pennsylvania Road and plaintiff. The bill of lading is the contract between the parties. It purports to be a contract of the Atlantic Coast Dispatch, signed Chas. F. Nye, and the terms of the bill of lading are the terms of the contract. Your answer to this issue depends in a great measure upon your answer to the first issue. No officer of the Pennsylvania Road proper signs it, but an officer of the Atlantic Coast Dispatch. But if Nye was an agent of the Pennsylvania Road from being the traffic manager of the Atlantic Coast Dispatch, and also an officer of the Atlantic Coast Dispatch, and the Pennsylvania Road was a member of this line as set out in the first issue, then the contract of Nye would bind the Penn-

sylvania Road; but if there was no such arrangement between the parties as set out in the first issue, and you answer that issue ' No,' then you ought to answer the second issue ' No.' For if the Pennsylvania Road was a member of this association of lines and made terms as set out in the issue, it would be liable on the contract.

"But if it was not a member of such an association it would not be liable. If you find that the Pennsylvania Road was one of the contracting companies, and you answer the first issue ' Yes,' you will answer the second issue ' Yes ;' otherwise you will answer it ' No.'

"It is only under the arrangement as set out in the first issue, if it existed, that the Pennsylvania Road can be held liable under this contract.

"As to the third issue : Did the Pennsylvania Road break its contract, if it made one ? If you believe this evidence you will answer this issue ' Yes.' Its excuse is that it was crowded with passenger traffic for the inauguration, and if this was all the delay the excuse might be sufficient. The obligation to carry the United States mail and passengers is higher than common freight, but this cannot avoid defendants if evidence is believed ; but there was negligence before the 2d when it was received at Jersey City.

"The Pennsylvania Road received this freight on March 2d and delivered it on March 12th at Rocky Mount, and their offered excuse is sufficient to cover this time. It was received at Jersey City fifteen days after it was shipped from Lowell; and in the absence of satisfactory explanation this delay was negligence and a breach of its contract. If you find the first issue ' Yes,' and the second issue ' Yes,' the Pennsylvania Railroad was responsible for the entire time of delay which occurred anywhere along the whole line.

" If you find the second issue ' Yes ' you will answer the third issue ' Yes,' because they could have gotten it before March 2d, and passed Washington before the crowd at the inauguration interrupted its passage, and the inauguration would not have interferred with them.

" As to the fourth issue : What damage has the plaintiff suffered by the wrongful conduct of defendants ? If it is responsible at all it is responsible for all the roads. The general rule of damages is such as was in the reasonable contemplation of the parties at the time the contract was made.

" If the road knew, or could have ascertained by ordinary care, that the freight was cotton machinery, and of a kind and a character that a delay would be likely to cause damage to plaintiff and stop its mill, the road would be responsible for the damages resulting from the delay and strictly traceable to it. The rule would be interest on the idle capital, for here it was men unemployed by reason of the delay ; and I direct you to allow interest on this idle capital so employed as one of the elements of damage. It would be interest on the capital and the amount paid the hands—such hands as you find were thrown out of employment by the delay, and which you think the defendants might fairly expect would be thrown out of employment by this delayed shipment.

" The evidence of the plaintiff tends to show that $150,-000 was the amount of the capital that remained idle and unemployed. The interest is $750 per month and 14 days would be 14—26. The plaintiff claims 17 days instead of 14, and if you find that so you can allow 17–30. The evidence tends to show that 80 hands were idle at an expense of $25 or $30 per day, and 14 days at $25 would be $350 ; interest on unemployed capital, $375 ; and cost of telegrams, $2—in their efforts to find the

car—making $727. If the company did not know that stoppage of the mill would follow, and could not by reasonable care know it, then all the damage suffered by the plaintiff would be the $2 spent for telegrams in looking up the car (while engaged in looking up the car) and the *per diem* of Mr. Ruffin (while engaged in looking up the car).

" Having settled upon the amount of damage, you will consider whether you will award interest or not. Whenever a man knows what he has to pay on a demand, or it can be ascertained by calculation, the law makes him pay interest, and when he does not know the amount the jury declare it; the jury can allow interest or not, as it may think proper. You will allow interest from March 13, 1893, or not, as you see fit.

" As to the fifth issue : If the W. & W. was a member of this association of roads and you answer the first issue ' Yes,' you will answer this issue ' Yes.' But if you find the first issue ' No,' and yet you are satisfied that T. M. Emerson was an officer of the W. & W., acting for that company as freight agent, and he caused this contract to be signed for his company, binding his company for the through freight from Lowell to Rocky Mount, his company would be bound for it whether it was a member of the association of roads or not. But if T. M. Emerson did not contract to ship the freight from Lowell to Rocky Mount you will answer the issue ' No.' Upon the issue J. H. Ruffin testifies that he saw Mr. Emerson personally, and the latter offered him inducements to ship through him ; so did S. K. Fountain, professing to act by orders from Emerson and the W. & W. Railroad. He says that he went to Ruffin by authority of Emerson to make the contract, and the terms of the bill of lading are the terms of the contract Mr. Emerson directed him to make

with Ruffin.   The agency of Nye is also for the jury to consider.   T. M. Emerson says he never made any contract except over his own road.   You will consider this; also whether the W. & W. contracted to ship freight through from Lowell, and if it did you will answer the issue ' Yes.'

"As to the sixth issue : If you find they made the contract and believe the evidence, you will find that they broke it. The freight was shipped February 15th and delivered March 12th, and no satisfactory reason given why they did not keep the contract.

" As to the seventh issue : As to the amount of damages the defendant road shall pay, you will apply the same rule as I gave it to you on the fourth issue. The court will arrange as to how it is to be paid."

There was judgment for the plaintiff on the verdict, and the defendants appealed.

Messrs. Jacob Battle, Brown and Connor for plaintiff.
Mr. John. L. Bridgers, for defendants (appellants).

FAIRCLOTH, C. J. : The defendants are duly organized companies engaged in the business of common carriers, with their several connecting lines, with all the responsibilities and immunities attaching to the business of such carriers.   Whilst we do not find it necessary to enter into the vast field of authorities and decisions defining the duties and relations of such carriers among themselves and to the public, a few general principles may be stated without citing authorities.

Common carriers are required to carry freight safely over their own lines, and make prompt delivery to the nearest connecting line when the consignee lives beyond the terminus of their own line and, when this is done, in the absence of any other agreement, their duties are performed,

and they are not responsible for any loss or damage unless it occurs while the goods are in their possession and under the control of themselves or their agents and servants.

A common carrier has power to enter into contracts and may stipulate with his customers, imposing a limitation on his common law liability in regard to rates, distance, time and place of delivery and the nature of the articles to be carried, whether perishable or not, unusual hazards and the like, *provided* always that the limitations are just and reasonable in the eye of the law, and such contracts will be enforced.

One well-settled rule of law is that no such company can stipulate for exemption from the consequences of its own negligence or that of its agents or servants.. A just regard for the rights of individuals and public policy will not permit it. The business of transporting passengers and freight in our State is important, and for the mutual benefit of carrier and shipper, and must be conducted under reasonable regulations. The Court cannot assume that either party in such business intends to contract contrary to law and such reasonable regulations as the public interests require. An instance of an unreasonable stipulation is pointed out in *Branch* v. *Railroad*, 88 N. C., 573, where the clause in the bill of lading was that the goods will be shipped " at the convenience of the company," which was held not to protect against an unreasonable delay. The bill of lading filed in the record contains both the receipt and the contract. It is not denied that all the parties had power to enter into the contract, and the terms of the contract are not in dispute. It is agreed that the bill contains the contract. The meaning and effect of the contract on the rights of the parties are the questions presented. The defendant Pennsylvania Railroad Company was brought into court by attachment pro-

119—45

cess, and subsequently entered a general appearance and filed an answer to the complaint, and then moved to dismiss the attachment on the ground that an attachment would not lie under our statute. We think his Honor rightly held that the motion to dismiss the attachment was immaterial, as the defendant was then otherwise in court. So, that matter is out of the way. It appears that the defendant Wilmington & Weldon Railroad Company is one of several connecting lines running south and doing business under the name of the Atlantic Coast Line, and that the defendant Pennsylvania Railroad Company is a system with several lines running northeast. The machinery was received at Lowell, Massachusetts, and its destination was Rocky Mount, N. C., a point on the Wilmington & Weldon Railroad Company line, and that these systems connect somewhere between Lowell and Rocky Mount. The contract was between the plaintiff and the Atlantic Coast Dispatch All-Rail Fast Freight Line, operating over the Pennsylvania Railroad and the Atlantic Coast Line and connections. This agreement is signed by T. M. Emerson, Traffic Manager Atlantic Coast Line, Wilmington, N. C., and by Charles F. Nye, Northeastern Freight Agent, Boston, Mass., and by other agents of other roads included in said systems. The machinery received was marked, consigned and destined to the plaintiff at Rocky Mount, N. C.

It is not denied that the defendants collected the whole freight at the point of delivery, and that the same is divided among the several lines in these systems in proportion to the number of miles on each road over which the goods are carried.

Upon these facts the plaintiff argues that the defendants and their connecting roads have agreed among themselves to conduct business through their systems under the name

and style of the "Atlantic Coast Dispatch;" that they have so advertised to the public, and have so contracted with him, and charge higher rates as a consideration for the fast service they profess to give, and that each road which is a member of the "Coast Dispatch" line is liable for the negligence of the other roads.   The defendants admit what appears in the bill and receipt, and that they do business under the name and style indicated, but insist that the "Coast Dispatch" is simply the name under which the defendants have agreed to operate their business; that they are thereby a simple association for the convenience of the public and not bound for each other's negligence on the several roads, and that, in fact, it is agreed in the conditions attached to their contract that neither company shall be liable for loss or damage not occurring on its own road.

This action is for damage resulting from delay in the transportation, and not for loss or damage to the articles shipped.   The plaintiff argues that there is no stipulation in the conditions against damage for delay, and that as to that matter there is no contract, and that he is remitted to his common law right against carriers for unreasonable delay.   We are not disposed to put the case upon that technical ground, as we are satisfied the parties desire the opinion of the Court on the main question.

The machinery was on the road from Lowell to Rocky Mount 25 days, and allowing the time claimed during inauguration week there is still sixteen or seventeen days, which is conceded to be an unusual length of time for passage between the points.   So, there was inexcusable delay somewhere along the line.   In the view we take, however, the particular place is an immaterial matter.   Upon examination and reflection we are of opinion that the defendants and their connecting lines are jointly liable, each for

the others, on the contract before us, and that they are also entitled to the same immunity and privileges as if the contract had been made by the individual company sought to be charged under said contract, that is to say, that they are engaged in business as partners under the name of the " Atlantic Coast Dispatch." They are still common carriers, none the less so because they have certain stipulations. Having jointly agreed to conduct the " All-Rail Fast Freight Line " business under the name above stated between the terminal points of their connections North and South, and having so informed the public and so contracted with the plaintiff, their true character is fixed by the law according to the nature of their business, and such character cannot be thrown aside by any declarations in the contract in relation to the consequences or liabilities attaching thereto.

The " Coast Dispatch " is one of the contracting parties, and if it represents anybody it must represent the defendants as two of its members. The fact that T. M. Emerson, Traffic Manager, is an agent of one of the defendants, and W. H. Joice, General Freight Agent, is an agent of the other, and so, also, of the whole list of agents at different localities, can make no difference. Why are they conducting business under the name of the " Coast Dispatch " instead of their own companies? The argument is that they are doing so for mutual convenience. In some respects that is plain ; but suppose the plaintiff should have to go to Pittsburg or other distant place to enforce his remedy. The convenience to him is not perceived. The receiving agent, Nye, at Lowell, appearing on the bill of lading as " Northeastern Freight Agent " only, we must assume he represents the " Dispatch " line, composed of defendants and others. Taking notice, as we are at liberty to do, that the numerous transportation lines in our country, con-

necting with each other, constituting continuous lines between remote localities, are important facts in the commercial life of the country, we can readily see that if the shipper should have to go to a distant State, and find as best he can the negligent party, and enforce his remedy against him there, then the expense and trouble would in many cases be ruinous. On the contrary, the carrier's remedy in a case like the present would be easy and speedy. The whole matter is this: The defendants and their associates have engaged in a public business, in the manner described, for mutual benefit and convenience, and attempted to avoid the legal consequences by adopting some fancy name and by stipulating for limitations on the liabilities incurred in the exercise of their privileges in such business. We find no case on "all-fours" with the present, but the discussions in the following cases support the principle and conclusion at which we have arrived: *City Bank of Ky.* v. *Adams Ex. Co.*, 93 U. S., 174, 183; *Bradford* v. *S. C. Railroad*, 62 Am. Dec., 411; *Clyde* v. *Hubbard*, 88 Pa. St. Rep., 358; 3 Wood on Railroads, p. 1922; *Phillips* v. *R. Co.*, 78 N. C., 294, 298; 59 Am. Dec., 447, 450, n.

The second assignment of error was that the court should have construed the contract and not submitted it to the jury. If so, the verdict cures it, according to our view of the case. The other requests and exceptions are dependent on the view of the court on the principal question. As to damages, we think his Honor instructed the jury according to the rule prescribed by this Court. *Foard* v. *R. R.*, 8 Jones, 235; *Roberts* v. *Cole*, 82 N. C., 292.

Affirmed.