W. H. GALLOP AND I. W. FISHER, PARTNERS, v. THE NORFOLK-SOUTHERN RAILROAD COMPANY AND THE NORTH RIVER LINE.

(Filed 21 February, 1917.)

1. **Carriers of Goods—Connecting Lines—Commerce—Negligence—Unreasonable Delay—Perishable Goods.**

Where a water transportation company and a railroad company have traffic arrangements for shipment of goods beyond the terminal of the former company, which accordingly accepted car-load shipments of potatoes and had delivered the same at the latter's depot, with notification thereof, the latter company is responsible for damage to the potatoes caused by its unreasonable delay in furnishing cars and transporting the potatoes, and leaving goods of such perishable quality exposed to the sun and weather upon its wharves for several days.

2. **Same—Through Bills of Lading—Carmack Amendment.**

Where a connecting carrier has accepted an interstate shipment of goods for transportation on a through bill of lading from the initial carrier, and by its negligent delay to forward the same the shipment has become damaged, it cannot avoid liability to the consignor on the ground that the initial carrier had no authority from it to issue the through bill of lading. This principle is not affected by the Carmack amendment.

3. **Carriers of Goods—Commerce—Connecting Lines—Unlawful Rates—Negligence.**

A forbidden rate of carriage made for carriage by connecting roads in interstate shipment of goods does not affect the question of the carrier's liability for damages caused to the shipment by its negligent act, but only the rate charged.

APPEAL by defendants from *Whedbee, J.,* at November Term, 1916, of PASQUOTANK.

*Aydlett & Simpson for plaintiffs.*

*William B. Rodman and J. Kenyon Wilson for Norfolk Southern Railroad Company.*

*Ehringhaus & Small for North River Line.*

CLARK, C. J. The plaintiffs, residing at Jarvisburg, Currituck County, N. C., shipped their produce by the North River Line and the Norfolk Southern Railroad to northern markets. The North River Line operates its steamers from Jarvisburg and other near-by points to Elizabeth City, where it has a traffic arrangement with the Norfolk Southern to carry the freight brought by said line to northern markets, sharing in the freight.

In June, 1915, the North River Line, in accordance with this standing arrangement, which began in 1911, delivered at Elizabeth City several hundred barrels of Irish potatoes, which required prompt shipment, as the railroad company well knew. On this occasion there was a failure to furnish the cars on application, so that the wharves of the defendant railroad company became congested and the potatoes were left for several days exposed to the sun and weather, causing the plaintiffs serious damage, which the jury have found was caused by the negligent delay of the defendant in not furnishing cars and not shipping the potatoes within a reasonable time after they were placed on the wharves of railroad company it was notified that the potatoes should be shipped.

There was evidence to support the above facts, and the court properly refused a motion to nonsuit. It appears that 300 barrels were received there in the early morning of 8 June, none of which left Elizabeth City until 10 June; that 300 barrels were received on the 9th and the remainder on the morning of the 10th, and that the defendant railroad could have shipped these in time and avoided the damage to plaintiffs' potatoes, if it had had the cars.

The defendant contends that though the North River Line gave a through bill of lading for these potatoes, it had no authority to do so at that time. This defense cannot avail, both because the defendant did accept and ship these potatoes on such through bills of lading, and, further, treating the shipments as delivered on their wharves at Elizabeth City as local shipments from that point, the liability of the defendant railroad for the delay is the same. The only difference would be as to the rate in such case, or the division of it between the North River Line and the railroad company, as to which no point is made and which in nowise affects the liability of the railroad company for the damage caused by its negligent delay in shipping. We have examined with care all the exceptions, and do not find that they require any discussion. The only serious question was one of fact, whether there was negligent delay on the part of the defendant in shipping these potatoes

after they were placed on their wharves in Elizabeth City, and the amount of the damages thereby sustained by the plaintiffs.

The Carmack Act provides: "That any common carrier, railroad, or transportation company receiving property for transportation from a point in one State to a point in another State *shall issue a receipt or bill of lading* therefor, and it shall be liable to the lawful owner for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass." The same act provides that "The holder of such receipt or bill of lading shall not be deprived of any remedy or right of action which he had under the existing laws." This question is fully discussed in *R. R. v. Riverside Mills,* 31 L. R. A. (N. S.), 28, and does not require repetition. The defendant is liable to this action, though not the initial carrier.

The point the defendant attempts to raise in this case is decided in *Kissenger v. R. R.,* 152 N. C., 248, which holds that, "If a rate of freight on an interstate shipment is forbidden by the United States statutes, this does not render the contract of carriage void, but the forbidden rate may be set aside." The defendant's contention, that if there was an illegal discrimination in the rate it would defeat the shipper from recovering damages for the negligence of the carrier, cannot be sustained either on reason or precedent.

No error.