REIDSVILLE PAPER BOX COMPANY v. SOUTHERN RAILWAY.

(Filed 23 April, 1919.)

**Carriers of Goods—Connecting Carriers—Delivering Carrier—Damages—Evidence—Trials.**

> Evidence tending to show that the delivering carrier of a connecting line of carriers over whose lines a shipment of goods had been transported from another State for delivery here had received from the consignee the amount of freight charged for the entire routing over the various lines, is sufficient to take the case to the jury in the consignee's action against the delivering carrier for damages. The question of the carrier's liability under the principles of principal and agent, and under the Carmack amendment to the Federal statute, discussed by CLARK, C. J.

WALKER and ALLEN, JJ., concur in result; BROWN, J., not sitting.

APPEAL by defendant from *Lane, J.,* at November Term, 1918, of ROCKINGHAM.

This action was begun before a justice of the peace to recover $81.60, the value of a box of braid "short" in a shipment from Fall River, Mass., to Reidsville, N. C., and $1.10 freight thereon paid by the plaintiff, to the defendant at Reidsville, N. C.

On appeal to the Superior Court the jury rendered a verdict for the same amount. Appeal by defendant.

*J. M. Sharp for plaintiff.*
*Manly, Hendren & Womble for defendant.*

CLARK, C. J. The shipment in question was made by the Hooper Sons Manufacturing Company from Fall River, Mass., to the plaintiff at Reidsville, N. C. The defendant presented a bill for the freight for the entire shipment and received payment therefor, including $1.10 freight on the shortage. On notice the defendant was required to produce the receipted freight bill. This had thereon a notation showing the shortage of one box of tape, which was checked "short at pier 14 N. R." The evidence that the shortage on the said shipment was in value $81.60 was not contradicted. Indeed, the defendant introduced no evidence, and the only question presented by the appeal is whether upon the evidence the case should have been submitted to the jury.

When the initial carrier at Fall River gave the through bill of lading for the goods to be delivered at Reidsville, it was acting not only on its own behalf, but as agent for all the carriers (which are usually named on the bill of lading) through whose hands the shipment would pass, and obligated for itself and for them its safe delivery at Reidsville, N. C. *Mills v. R. R.,* 119 N. C., 693, and citations in Anno. Ed.

When the defendant, the last carrier, presented the freight bill and receipted the same, it did so as agent not only for itself but for the entire chain of carriers from Fall River, among whom the freight charged was to be apportioned.

In the early days of transportation by rail a passenger bought his ticket over each successive line, and there were no through tickets, but the pressure of business and the necessity of the economy of time of the passenger, and economy on the part of the railroad companies, by selling one ticket instead of a new ticket at the initial point of each railroad, necessitated a change. There being no uncertainty as to the company by which a passenger sustains injury there has been no modification by which the initial carrier has been made responsible for personal injuries to a passenger. But as to the shipment of freight, whose volume has been enormously increased, the course of dealings is that the initial carrier assumes for itself and all others on the through bill of lading liability for its safe delivery, and this has been recognized by the Carmack amendment which authorizes action for loss or damage to goods in transit against the initial carrier, and the courts in all the more recent decisions have recognized that a through bill of lading is in effect a joint contract upon which any one of the lines embraced in the contract of carriage can be sued, and recovery had against such corporation.

This has become a necessity in the present enormous development of through transportation by rail and steamer lines. It would be impracticable to require a shipper to sue the initial carrier and upon the finding by a jury that the loss was not sustained on that line to sue in succession each of the companies composing the through line over which the shipment passed. This would be a *reductio ad absurdum*.

The various companies which compose, *pro hac vice,* the "through line" over which any shipment passes, make a joint contract for their own convenience, or it may be a *quasi* partnership for the occasion, by which the bill of lading is given at the point of origin for the receiving company on behalf of itself and as agent for all the others down to the place of destination, and on this joint contract any company in such line of through traffic can be sued. *Gilikin v. R. R.,* 174 N. C., 138. Upon proof of loss or nondelivery, the means are within the knowledge of the carriers, and not accessible to the shipper, by which the default can be readily traced and placed upon the particular company liable therefor, and the loss adjusted in the settlement of the through traffic accounts of these corporations. *Gallop v. R. R.,* 173 N. C., 21.

So, in like manner, whether the receiving company or the company delivering the goods receipts for the freight, it is a discharge of the shipper binding on all the companies, and if there is a shortage in such

delivery, action can be brought against any company represented by the bill of lading or in the freight receipt. The company liable for the damage or shortage will be ascertained by the common traffic manager, and in the settlement of the through traffic passing over their lines, the carrier responsible will be charged up with the loss.

Any other arrangement would be impractical in the present enormous development of through traffic. The defendant relies upon the head-note in *Insurance Co. v. R. R.,* 104 U. S., 146, decided in 1881, that "in the absence of a special contract, express or implied, for the safe trans-portation of goods to their known transportation, the carrier is only bound to carry safely and deliver to the next carrier in the route"; but the decision in that case states that the facts found were that there was no through bill of lading and the bill of lading specified that the receiv-ing company should not be held liable for any damage or deficiency beyond its terminus. In *Myrick v. R. R.,* 107 U. S., 102, it is also ex-pressly provided in the bill of lading that "the company will not be liable or responsible for any loss, damage, or injury to the property when the same shall have been sent from any warehouse or station of the company." *Judge Field* says "The receipt does not on its face im-port any bargain to carry the freight through."

The defendant also relies upon *McGuire v. R. R.,* 153 Federal, 434, which holds that the fact that the destination of a shipment is beyond the line of the receiving company, "does not create any joint responsi-bility between the connecting carriers where the shipment over each is under a separate contract which limits the liability for loss or in-juries to such as may occur on its own line." These cases, therefore, do not apply, for it does not appear that there is any such restriction in the bill of lading in this case.

If there were such restriction it is now invalid under the Carmack amendment, section 8604a U. S. Comp. Stat., 1918, which authorizes action in such cases against receiving carrier, which is given its remedy over against the carrier causing the loss. *Ib.,* 8604aa. It may very well be doubted if under the sharp competition between rival lines in these days (until the recent assumption of governmental control) a through bill of lading with such restrictions (even if valid) would be accepted by shippers with the almost utter impossibility of shippers ascertaining and fixing the loss upon the proper carrier in case of dam-age or loss. The liability exists in spite of any agreement to the con-trary, and even when there is no bill of lading. *R. R. v. Riverside Mills,* 219 U. S., 186; 31 L. R. A. (N. S.), 7, and notes. There is a presump-tion that the terminal carrier who delivers the freight short or in bad order is liable. See notes to *R. R. v. Riverside Mills,* 31 L. R. A., at p. 106. The defendant offered no evidence to rebut this presumption.

23—177

It was under and by virtue only of this being a joint contract binding upon the defendant, and in recognition and ratification of its liability thereunder, that the defendant undertook to carry over its line and deliver this shipment to the plaintiff and to collect freight therefrom for the entire transportation from Fall River.

The through bill of lading and the receipt for the through freight by the defendant are evidence of the joint-contract, *Mills v. R. R.,* 119 N. C., 693, and citations thereto in Anno. Ed., and it was not error in the absence of all evidence to the contrary to instruct the jury that "If they believed the evidence to answer the issue in favor of the plaintiff." There was no controversy as to the value of the goods lost and of the amount of freight paid thereon.

The appellant, both in his brief and argument, presents only his right to a nonsuit. Consequently his exception to the charge is abandoned. Rule 34, 164 N. C., 551. The testimony therefore must be taken in the light most favorable to the plaintiff. *Hopkins v. R. R.,* 131 N. C., 463. And upon the evidence a reasonable inference arises that the initial carrier was the duly authorized agent of the other carriers through to the point of destination, upon the joint-contract arising upon the bill of lading.

No error.