M. V. MOORE & COMPANY v. SOUTHERN RAILWAY COMPANY.

(Filed 22 March, 1922.)

1. **Carriers of Goods—Negligence—Evidence—Failure to Deliver—Common Carriers.**

   Where the transportation of a box of merchandise has been made under a bill of lading for interstate shipment over connecting lines of common carriage, evidence that the box was empty when delivered to the consignee is sufficient evidence of negligence to take the case to the jury in an action to recover damages from the delivering carrier.

2. **Carriers of Freight — Connecting Lines — Negligence—Common-law Liability—Common Carriers.**

   The common-law liability of one of several connecting carriers is ordinarily limited to negligence over its own line, with the burden of proof upon the plaintiff in the action to show facts and circumstances which change or affect such liability.

3. **Same—Contracts—Partnership.**

   At common law a carrier was liable for loss or damage to a shipment of goods while in its possession with the duty to deliver it without damage to the next succeeding carrier, except for causes not due to the act of God, the fault of the shipper or the inherent nature or quality of the

goods; and in the absence of any contract or partnership agreement between the carriers, or constitutional or statutory provision to the contrary, a common carrier is not required to transport goods to a point beyond its line; and whether such carrier is the initial, intermediate, or terminal one, it is ordinarily liable at common law only for such loss or damage as results from its own negligence.

**4. Same—Federal Statutes—Commerce—Principal and Agent.**

Under the provisions of the Federal statutes applying to interstate shipments of goods by a connecting line of carriage, the Carmack amendment to the Hepburn law, the receiving carrier is considered as having made a through contract, with liability for loss or injury occurring from negligence of any of the connecting lines over which the shipment may pass, as well as for loss or injury occurring on its own line, on the principle that each connecting carrier is made the agent of the receiving carrier; but where the delivering carrier is sued for the loss of a shipment, and it is established that the loss occurred on the line of the receiving carrier, a recovery may not be had for such loss against the terminal carrier.

**5. Carriers of Goods—Common Carriers—Connecting Lines—Contracts—Partnership—Negligence.**

By a special contract or partnership relation, connecting lines of common carriers between themselves may make the receiving, intermediate, or terminal carrier, or all of them, liable for loss or injury to a shipment upon whatever line the actionable negligence may occur.

CLARK, C. J., dissenting.

APPEAL by plaintiff from *Harding, J.,* at the June Term, 1921, of BUNCOMBE.

Civil action to recover damages for the loss of merchandise.

On 5 October, 1917, the plaintiffs ordered from Friedman & Company of New York a box of clothing, which was turned over to the Pennsylvania Railroad Company for transportation and delivery to the purchasers in Asheville. The Pennsylvania Railroad then issued a straight nonnegotiable bill of lading containing this provision:

"No carrier shall be liable for loss, damage, or injury not occurring on its own road or its portion of the through route, nor after said property has been delivered to the next carrier, except as such liability is or may be imposed by law, but nothing contained in this bill of lading shall be deemed to exempt the initial carrier from any such liability so imposed." Section 2. The defendant was the terminal carrier. The agent of the defendant in Asheville collected the freight charges and delivered the box to the plaintiffs; and the box, when opened, was found to contain paper and packing, but no part of the original shipment. The plaintiffs filed with the defendant a claim for the invoice price of the goods, together with the charges for freight, and brought suit against the defendant after it had refused to make payment. The Pennsylvania Railroad is not a party to the action.

The issues were answered as follows:

"1. Did the initial carrier, Pennsylvania Railroad Company, receive from J. Friedman & Company, to be transported to the plaintiff at Asheville, North Carolina, the box containing the clothing mentioned and described in the complaint?    Answer: 'Yes.'

"2. If so, was said clothing lost by reason of the negligence of the Pennsylvania Railroad Company, as alleged in the complaint?    Answer: 'Yes.'

"3. If said clothing was delivered to said Pennsylvania Railroad Company, was the same lost by the negligence of the Southern Railway Company?    Answer: 'No.'

"4. What damages, if any, are the plaintiffs entitled to recover of the defendant?    Answer: '$292.14, with interest from 5 October, 1917.'"

The plaintiffs made a motion for judgment upon the verdict on the ground that the bill of lading constituted a contract or partnership by which the receiving carrier and the connecting lines became jointly and severally liable for the loss.    The court's denial of the motion is assigned for error.

*Lee & Ford for plaintiff.*
*Martin, Rollins & Wright for defendant.*

ADAMS, J.    The case was appropriately submitted to the jury on the question of the defendant's negligence.    Proof that the box was empty when delivered to the plaintiffs required of the defendant an election between introducing testimony in exoneration and risking an adverse verdict on the evidence of the plaintiffs.    *Meredith v. R. R.,* 137 N. C., 478; *White v. Hines,* 182 N. C., 275.    But the verdict shows that the loss was due, not to the negligence of the defendant, but to the negligence of the initial carrier.    The answer to the third issue exonerated the defendant from the charge of negligence.    The question for decision, then, is this:    Upon the pleadings and the proof in this cause, can the terminal carrier, who collected the freight charges when the shipment was delivered, be held liable in damages to the consignee for the negligence of the receiving carrier, upon bare proof of carriage on a uniform nonnegotiable bill of lading, which contains the provisions hereinbefore stated?    There is no contention that the defendant incurred liability by reason of the joint or concurrent negligence of separate lines independently operated.

As a general rule, the liability of a common carrier is presumed to be its common-law liability, and any party attempting to prove otherwise carries the burden of showing facts and circumstances which change or affect such liability.    *N. J. Steam Nav. Co. v. Bank,* 6 How., 344;

*R. R. v. Stock Co.,* 136 Ill., 643; *R. R. v. Barrett,* 36 Ohio St., 448; · *Jackson v. R. R.,* 23 Cal., 268; *Graham v. Davis,* 62 Am. Dec., 285; 10 C. J., 110.   At common law a carrier was liable for loss or damage to property in its possession, not due to the act of God, the fault of the shipper, or the inherent nature or quality of the goods; but such carrier was bound to carry the shipment only over its own line, and to deliver it without damage to the next succeeding carrier.   The English doctrine announced in 1841, in *Muschamp v. R. R.,* 8 Mees. & W., 421, has been repudiated by the Supreme Court of the United States, and by the greater number of the American courts, and the generally accepted doctrine has been stated as follows:   In the absence of any contract, or partnership agreement, or constitutional or statutory provision, a common carrier is not required to transport goods to a point beyond its line, for its obligation extends only to carriage to the end of its route and delivery to the consignee or to the next succeeding carrier; and in these circumstances the carrier, whether initial, intermediate, or terminal, is liable only for such loss or damage as results from its own negligence. In *R. R. v. Myrick,* 107 U. S., 102 (decided in 1883), *Mr. Justice Field* said:   "The general doctrine, then, as to transportation by connecting lines, approved by this Court, and also by a majority of the state courts, amounts to this: that each road, confining itself to its common-law liability, is only bound, in the absence of a special contract, to safely carry over its own route and safely to deliver to the next connecting carrier, but that any one of the companies may agree that over the whole route its liability shall extend.   In the absence of a special agreement to that effect, such liability will not attach, and the agreement will not be inferred from doubtful expressions or loose language, but only from clear and satisfactory evidence."   *R. R. v. Ex. Co.,* 117 U. S., 1; *R. R. v. R. R.,* 110 U. S., 667; *R. R. v. Pratt,* 22 Wall., 6; *R. R. v. Riverside Mills,* 219 U. S., 186; *McConnell v. R. R.,* 163 N. C., 504; *Phillips v. R. R.,* 78 N. C., 294; *Lindley v. R. R.,* 88 N. C., 550; *Mills v. R. R.,* 119 N. C., 694.

The plaintiffs insist, however, that this principle is not applicable here for the reason that it has been modified both by the Carmack amendment to the Hepburn law, and by the contract of the connecting carriers.   It becomes material, therefore, to inquire, first, into the practical operation of the Carmack amendment in its relation to intermediate and terminal carriers.   This act provides:   "That any common carrier, railroad, or transportation company receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property, caused by it or by any common carrier, railroad, or transportation company to which

such property may be delivered, or over whose line or lines such property may pass, and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed: *Provided,* that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law.

"That the common carrier, railroad, or transportation company issuing such receipt or bill of lading shall be entitled to recover from the common carrier, railroad, or transportation company on whose line the loss, damage, or injury shall have been sustained, the amount of such loss, damage, or injury as it may be required to pay to the owners of such property as may be evidenced by any receipt, judgment, or transcript thereof." 55 Law. Ed. U. S., 178. Act 29 June, 1906; 34 St. L., 595. The "existing law" referred to is, of course, the Federal law. *Express Co. v. Croninger,* 226 U. S., 491.

Under this act, when the receiving carrier accepts an interstate shipment, it is conclusively treated as having made a through contract, and will be liable for loss or injury occurring on any connecting line over which the shipment may pass, as well as for loss or injury occurring on its own line. *Express Co. v. Croninger, supra; R. R. v. Carl,* 227 U. S., 639. This, on the principle that each connecting carrier is made the agent of the initial carrier. In *R. R. v. Riverside Mills,* 219 U. S., 204, *Mr. Justice Lurton* said, "Reduced to its final results, the Congress has said that a receiving carrier, in spite of any stipulation to the contrary, shall be deemed, when it receives property in one state, to be transported to a point in another, involving the use of a connecting carrier for some part of the way, to have adopted such other carrier as its agent, and to incur carrier liability throughout the entire route, with the right to reimbursement for a loss not due to its own negligence." *R. R. v. Wallace,* 223 U. S., 481; *Commis. Co. v. R. R.,* 262 Ill., 400; *R. R. v. Ward,* 169 S. W., 1035. By virtue of this act, the intermediate and terminal carriers are made the agents of the receiving carrier; but the act does not purport, in terms express or implied, to make any connecting line liable in damages for the negligence of the initial carrier.

The next question raised by the plaintiffs is whether, in the present case, without regard to the Carmack amendment, there was a special contract between the several carriers by which the defendant became liable for the negligence of the carrier first receiving the shipment.

In approaching the question we do not controvert the established principle that a special contract or partnership relation among connecting lines may make the intermediate or terminal carrier liable for loss or injury, whether occurring on its own line or on the line of another connecting carrier. *Barter v. Wheeler,* 6 A. Rep., 434; *Phillips v. R. R., supra; Lindley v. R. R., supra; R. R. v. Myrick, supra.*

But in the complaint there is no allegation upon which to base the application of this principle. The plaintiff does not allege either a partnership or a special contract for joint transportation. The substance of the only relevant and material allegations in the complaint is this: the goods were packed by the shippers and delivered to the receiving carrier, to be transported by it and its connecting carriers to the plaintiffs in Asheville, and the bill of lading was thereupon issued. Considered in the light of section 2 in the bill of lading, the absence of an allegation of a partnership or special contract for joint transportation is all the more marked. Without allegation, proof of such partnership or special contract is incompetent and unavailing; for in our procedure is firmly embedded the principle that proof without allegation is no less fatal than allegation without proof. *McKee v. Lineberger*, 69 N. C., 217; *McLaurin v. Cronly*, 90 N. C., 50. In these circumstances the ultimate inquiry is confined to the legal import of the bill of lading. Taken in connection with the allegations referred to, does the receipt or bill itself constitute a partnership among the connecting carriers? If, as we have seen, the Carmack amendment does not create such partnership, we must search for an answer in the relation that would have existed between the connecting lines, by virtue of the bill of lading, if this amendment had not been enacted. Under such conditions—if the Carmack amendment were not in force—the receiving carrier, when the shipment was tendered, would have had the right to contract either to carry the goods to their destination or to carry them safely over its own line only, and then to deliver them to the next carrier. In case of the latter election the next connecting carrier would have been the agent of the shipper; and in case of the former, the intermediate or terminal carrier would have been the agent of the receiving carrier. In neither event would the initial carrier have been the agent of either of the connecting lines. *R. R. v. Riverside Mills, supra;* 10 C. J., 518. This conclusion is fortified by the provisions of section 2 in the bill of lading. This section is not a limitation by contract of the defendant's common-law liability; for no common-law obligation devolves upon any carrier to transport goods over lines other than its own, and hence there is no common-law liability for loss or damage not occurring on its own line and not caused by its own negligence. The plaintiffs, not having alleged a partnership or special contract, did not tender an issue relating to either question. The case turned upon the issues as to negligence, and the verdict was adverse to the plaintiffs. At the trial there was neither an allegation nor an issue of a partnership or special contract, and we hold that there was no error in the judgment of the court. The plaintiffs cited *Paper Box Co. v. R. R.*, 177 N. C., 351, in support of their

contention; but that case and this are entirely distinct. Indeed, the question arising in the instant case has· not heretofore been presented to this Court for decision.

No error.

CLARK, C. J., dissenting: On 5 October, 1917, the plaintiffs purchased a bill of goods, $290, from Friedman & Company in New York City, who delivered the same to the Pennsylvania Railroad Company, who agreed to transport them over its own and connecting lines to Asheville, N. C., and gave the plaintiffs a bill of lading to that effect. On 3 November, 1917, the defendant Southern Railway Company delivered the box, supposed to contain the shipment of goods, to the plaintiffs, and accepted payment in full of the freight from New York City. On opening the box it was found to contain nothing but waste paper and trash. The plaintiffs filed with the defendant Southern Railway Company their claim for the value of the goods lost and freight paid. This being refused, this action was brought.

The liability of the defendant should be settled upon the right and reason of the thing as heretofore decided in several cases in this Court. The Pennsylvania Railroad Company agreed, for itself and its connecting lines, to deliver the shipment in Asheville and the defendant company ratified that contract by accepting the shipment and delivering the box to the plaintiffs and accepting payment for itself and associates of the entire freight from New York to Asheville.

It is true that the Pennsylvania Railroad Company put in the bill of lading a denial of any responsibility for default except as to carriage along its own line, but under the Carmack amendment the Pennsylvania Railroad Company is expressly made responsible.and liable for the whole transit. The initial carrier could not restrict its liability against the responsibility placed upon it by virtue of the Carmack amendment, and as on behalf of itself and connecting lines it assumed a joint contract to take the shipment at New York and deliver it at Asheville it could not restrict that liability of a common carrier against the liability of any one of the lines.

In the execution of the contract to take this box of goods in New York and deliver it in Asheville no valid restriction could exempt the defendant from liability for the goods, whose shipment it accepted at the beginning of its line, and the payment of the entire freight on which it accepted at its terminal point.

A partnership cannot stipulate that it will not be liable for the misconduct or negligence of any one of its partners in the transaction of the partnership business, and still more is it against public policy that one

railroad company shall undertake to receive a package in New York and transport it over its own and connecting lines to Asheville, the defendant company ratifying this contract by accepting the box for shipment, transporting it along its route, and, at its end, as agent for all the lines from New York to Asheville, collect freight and then deny all liability.

This proposition was discussed and fully settled in *Mills v. R. R.*, 119 N. C., 693, and the cases in our Reports which have followed that authority. Indeed, it has been held that in spite of any agreement to the contrary, or even where there is no bill of lading, there is a presumption that a terminal carrier who delivers the freight short or in bad order is liable. *R. R. v. Riverside Mills*, 219 U. S., 186; 31 L. R. A. (N. S.), and notes.

The defendant relies upon the headnote in *Ins. Co. v. R. R.*, 104 U. S., 146, decided in 1881, long before the Carmack amendment rendered statutory the liability of the initial carrier "that in the absence of a special contract, express or implied, for the safe transportation of goods to their known destination, the carrier is only bound to carry safely and deliver to the next carrier in the route"; but the decision in that case states that the facts found were that there was no through bill of lading, and the bill of lading also specified that the receiving company should not be liable for any damage or deficiency beyond its terminus. Since then the Carmack amendment has recognized that such contract as this is in fact a partnership agreement, and hence that the receiving carrier is responsible. This statute does not negative in any respect the decision in *Mills v. R. R.*, 119 N. C., 693, and numerous citations thereto in 2 Anno. Ed., and the Carmack amendment is wholly illogical unless it is based upon the same principle that this Court has always recognized as the basis of the decision in *Mills v. R. R., supra.*

Upon the evidence the reasonable inference arose as a matter of law that the initial carrier was the duly authorized agent of the other carriers through to the point of destination, not only because of the Carmack amendment, but upon the foundation on which that statute rested that it was a joint contract upon the bill of lading making each of the joint lines extending from New York to Asheville a member of the partnership existing *pro hac vice* for the transportation of the shipment and liable, more especially the initial carrier and the terminal carrier.

The liability of the carrier for nondelivery or damage to freight does not require proof of negligence to be made (as was required in this case) by the consignee, for the carrier is an insurer except against the acts of God or the public enemy. The court below erred in putting this burden on the plaintiff.

It would be a very great hardship in the transportation of freight for long distances, over several lines of road, if when the consignee brings suit against the last carrier in the joint contract and fails to locate the loss on that line that then it must sue the next carrier, and the next, and so on up through to the initial carrier, who was certainly made liable, not only itself, but as agent for all the others. It is easy for the joint lines, making for this occasion the continuous transportation of this shipment from New York to Asheville, to ascertain by wire or correspondence promptly, accurately and inexpensively where the default lies. It is almost impracticable for the consignee to ascertain this fact without suing in succession each member of the line, and traveling from carrier to carrier and from state to state, and employing successive lawyers to prosecute the action.

This will amount practically to a denial to the shipping public of all remedy unless the consignee should go to the expense at once of suing the initial carrier at the most distant point on the line. To require a consignee of a small shipment like this to sue in succession a half-dozen carriers in order to trace and locate the loss of this $290, or any other shipment, is a denial of justice which should not be imposed on the shipping public.

The true doctrine, as laid down in *Mills v. R. R.,* 119 N. C., 693; *Gallop v. R. R.,* 173 N. C., 21; *Paper Box Co. v. R. R.,* 177 N. C., 351, and other similar cases, is thus summed up in *Paper Box Co. v. R. R.,* 177 N. C., 351: "The various companies, which compose *pro hac vice* the through line over which any shipment passes, make a joint contract for their own convenience, or it may be a *quasi*-partnership for the occasion, by which the bill of lading is given at the point of origin by the receiving company on behalf of itself and as agent for all the others down to the place of destination, and on this joint contract any company on such line of through traffic can be sued."

Public policy and elemental principles of justice require that the consignee, for whom this transportation was received and to whom the bill of lading is given by the initial carrier on behalf of all the carriers constituting the line of transportation for the goods, should be held liable, leaving them to apportion among themselves, or ascertain on which line the loss occurred. No mere technicality, nor reference to decisions made at a time when the law in regard to liability for shipments over more than one line was in an unsettled state, should govern. The only reasonable and logical ruling, especially since the Carmack amendment has fastened liability upon the initial carrier, because it is held as acting and assuming responsibility for all the carriers, is that all the carriers on the line over which it is stipulated that a given shipment shall pass are equally liable, more especially the terminal carrier, who collected the freight and delivered the rifled package, or failed to deliver

it at all, while receiving the freight. The law must conform to the modern customs and methods of transportation, and to the reason of things, for, as Coke says, "Reason is the life of the law."

This line of carriers having agreed, through its initial carrier, who is certainly responsible for them all under the Carmack amendment, that these goods should be safely transported from New York to Asheville, should be jointly and severally held liable for the failure to deliver, or for the delivery in a damaged condition, of the goods which the initial carrier agreed should be delivered in Asheville. Any other ruling will fall short of the reasoning applicable to such shipments as laid down in the cases above cited.