Ruffin, Judge.
 

 This appeal seems to rest on the argument, that the indictment ought, and does charge the want of a licence
 
 ;
 
 and therefore the state must prove it. It is true, there is a known distinction, where an exception is embraced in the enacting clause of a statute, and where it comes in by a proviso, or by distinct enactment. . In the former case, the indictment must allege, as here, that the defendant is not within the exception, because the negatives are descriptive of the offence
 
 ;
 
 tho’ in the latter it may be silent on that point, and the justification or excuse must be adduced in defence by the party accused. Yet the consequence claimed by this defendant cannot be yielded, The questions are very different. This is not a question of pleading. It is one of evidence. . And altho’ it be admitted, that the indictment must negative the existence of the licence, it remains to inquire, upon whom the proof on that point is incumbent; or rather, what is proof pf the defendant’s guilt. The general rule, founded on convenience and common sense, is that the affirmative must he proved. He, who alleges a fact to be, is naturally expected to show its
 
 existence;
 
 and not he, who denies it, to show that it is not. The few exceptions to this principle, as yet established, do not extend to the case before us. In the case of
 
 Lord
 
 
 *300
 
 Halifax,
 
 (Bull. N. P.
 
 298,) who was accused of refusing to deliver to Lis successor the papers of his office, it was required that the refusal should be shown. This might be, because the law presumes that every sworn public officer will do his duty, until the contrary appears. Or it might be, .that as the omission is the criminal act, it must be expressly proved
 
 ;
 
 and it can be done, and ought to be done by affirmative evidence to the fact of refusal, as is the case in every instance where a previous demand and refusal are necessary, without putting the defendant to show, 0)i his part, performance or a readiness.
 

 There are other exceptions, where the affirmative evidence is- not within the knowledge, or peculiarly within the knowledge of the defendant; as in
 
 Williams
 
 v.
 
 The E. I. Co.
 
 (3
 
 East
 
 162) and
 
 Rex
 
 v. Rogers, (2
 
 Camp.
 
 654). In all other cases, the affirmative, as being easily, explicitly and directly shown, ought to be proved. This has been held to embrace special qualifications, and licences to exercise particular trades. In
 
 Rex
 
 v. Stone, (1
 
 East
 
 639) it was admitted by
 
 Lord Kenyon
 
 and
 
 Mr. Justice Law-
 
 rencethat in an- action on the game laws, no negative proof was ever given by the plaintiff, of a want of qualification in the defendant j but the affirmative lies on the latter to show such qualification. It is true, the court was equally divided in that case ; but not on the general question of evidence. Those two judges thought, that on information before magistrates, the negative, a want of qualificatidn, ought to appear on the conviction, as having been proved by the prosecutor ; while the other judges held differently. I confess, I do not perceive why the modes of proof should be different before two legal tribunals
 
 ;
 
 since the same conclusion is sought by each, and would seem to follow from the same evidence before both. But the concession there, (in which all agreed,) that in an action no negative evidence is necessary, is sufficient for the present case. And in the subsequent case of
 
 Rex
 
 v.
 
 Turner. (5 M.
 
 &
 
 S.
 
 206,) cited in 2
 
 Stark. on Ev. 627, note h,
 
 the distinction between actions and informa-tions before magistrates is disallowed, and the
 
 onus
 
 thrown alike in both instances on the defendant, as alleging the affirmative. This is a strong
 
 example;
 
 be
 
 *301
 
 cause there are divers disqualifications under the game laws, some of which may involve complicated inquiries into the title to estates, the exercise of manorial rights, and the due appointment of game-keepers. But the principle applies much more forcibly, where the point in dispute is the existence of a single and simple written do-dument, which, if it exist at all, must be in the possession of the defendant. In such a case, the failure to produce the paper is, according to all experience of the motives and actions of men, proof that there is none such ; which consideration induced me to say, that the question was rather, whether there was legal proof of the defendant’s guilt, than whether the proof should come from one side or the other. The refusal or omission to exhibit written evidence,' which the party alleges to exist, and to he in her exclusive power and possession, containing a plain " authority for her acts, creates a legtilfand plenary/presumption against her. It seems, in and by itself, to be conclusive proof. Accordingly in
 
 Rex
 
 v.
 
 Smith,
 
 (3
 
 Bur
 
 1475.) it was held, that where a person admits before a magistrate the main fact of trading as a hawker and peddler, lie must prove that he had a licence., It is remarkable that this was decided by
 
 Lord Mansfield,
 
 upon a conviction on an information, altho’ in the case of
 
 Rex
 
 v.
 
 Jarvis,
 
 relied on by
 
 Lord Kenyon
 
 in the case of
 
 Rex
 
 v.
 
 Stone,
 
 he held that negative evidence must be given by the prosecutor, on an information under the game laws. This shows, that in
 
 Smith’s
 
 case, he considered the fact of not producing equivalent, as a matter of evidence, to not having the licence. It is true, the statute on which that conviction was founded, provided both for the party’s not having a licence, and not producing it to a justice of the peace, when demanded. But the conviction was for
 
 not having
 
 the licence in that case, and the evidence to prove that fact was stated by the magistrate in the conviction, to be the acknowledgment of trading,
 
 and the refusal to produce the licence on that trial;
 
 and the court refused to quash.
 

 Such I always understood the rule to be, on trials for retailing without licence,! when on the circuit.
 

 Per Curiam. — JudgmkNT .affirmed.