HAMMER LUMBER COMPANY v. SEABOARD AIR LINE RAILWAY AND EASTERN MACHINERY COMPANY, ET AL.

(Filed 24 March, 1920.)

1. Carriers of Goods — Railroads — Attachment — Freight — Advance Charges—Liens—Continued Transportation—Bills of Lading—Vendor and Purchaser—Bills and Notes—Order Notify.

When a shipment of freight by common carrier by rail is to consignor, notify the purchaser, with bill of lading attached to draft, which the purchaser pays, but refuses the shipment as not according to a certain test agreed upon, and there being back-freight charges on the shipment to the consignor and reshipped upon the same car, not appearing on the purchaser's bill of lading, except as "advance charges," in proceedings in attachment by the purchaser to recover the money he had paid to the consignee, *Held*, the back-freight charges constituted a lien on the shipment in the carrier's favor, and enforcible out of the proceeds of the sale under the proceedings in attachment.

**2. Carriers of Goods—Connecting Carriers—Freight—Advance Charges—Subrogation—Equity.**

Where a common carrier pays the charges of a preceding carrier in the transportation of a shipment of goods, it is· subrogated to rights of that carrier and may demand the entire freight charges before surrendering the shipment.

**3. Carriers of Goods—Railroads—Vendor and Purchaser—Attachment—Demurrage—Liens.**

Where demurrage charges have accrued on a consignment of goods by reason of attachment proceedings in a controversy between the vendor and purchaser upon the refusal of the plaintiff to pay its proper freight charges, the carrier has its lien for the demurrage thus caused.

APPEAL by defendants from *Allen, J.,* at October Term, 1919, of NEW HANOVER, from a judgment upon the pleadings by *Allen, J.,* against the Seaboard Air Line Railway and Walker D. Hines, Director General.

The judge by consent found the facts as follows: The Easton Machinery Company had shipped to it at Allenton, Pa., from Utica, N. Y., two carloads of boilers, the subject of this controversy; at Allenton, Pa., the said Easton Machinery Company, without paying said charges and without unloading, reshipped the said two cars of boilers on bills of lading from Allenton, Pa., to Wilmington, N. C., to its own order, "Notify Hammer Lumber Company" (the plaintiff), which bills of lading came with a draft on the Hammer Lumber Company for $800 attached, payable to the order of Easton Machinery Company, which, when presented, was duly paid by the plaintiff; said draft was a part of the purchase money of $1,400 agreed to be paid for said boilers, and the balance of $600 was to be paid provided the boilers stood a certain agreed test at Wilmington, and were accepted by plaintiff; they did not come up to the agreement and were rejected by plaintiff after they were subjected to the test at Wilmington; no part of this agreement was known to the railway company; the said boilers arrived at Wilmington 25 August, 1919, and on 9 September the plaintiff caused a warrant of attachment to be levied thereon as the property of the defendant Easton Machinery Company, it having refused to refund to plaintiff the said sum of $800, which had been paid on their draft under the agreement to refund if the boilers failed to stand the agreed test. The plaintiff tendered to the agent of the carrier at Wilmington the freight and all charges from Allenton, Pa., to Wilmington, N. C., up to and including 23 September, 1919, together with the bills of lading above mentioned, but the defendant railroad company refused to receive the same unless the plaintiff would also pay the "advance charges from Utica, N. Y., to Allenton, Pa., of $236.36," said sum being shown on the way bill as advance charges, but no notice of same being shown on the bill of lading.

The Hammer Lumber Company recovered judgment against the Easton Machinery Company for $1,453.29, and it was further adjudged that the plaintiff pay into court the sum of $236.36, the amount shown on the way bill as advance charges to wait the further order of the court and further that the plaintiff pay to the carrier the sum of $416.93 being the freight and charges from Allenton to Wilmington admitted by the plaintiff to be due, and directed the sheriff to sell the said boilers, and after paying into court the charges for demurrage accrued against said shipment since 23 September, 1919, amounting to $267.80 and costs of sale, to pay over the balance to the Hammer Lumber Company.

The court further held, as a matter of law, that the defendant, Seaboard Air Line Railway Company and Walker D. Hines, Director General, are not entitled to recover the said sum of $236.36 due for advance charges from Utica, N. Y., to Allenton, Pa., as marked on the way bill.

The defendants, Seaboard Air Line Railway and Walker D. Hines, superintendent, excepted to the judgment that they were not entitled to recover said advance charged out of the proceeds of the sale of the boilers, nor the $267.80 demurrage charges up to the sale.

*J. A. McNorton for plaintiff.*
*John D. Bellamy & Son for defendants.*

CLARK, C. J. The shipper of the machinery was the Easton Machinery Company at Allenton, Pa., who reshipped on the same cars this freight which it had received from Utica, N. Y. The bill of lading to the plaintiff carried only the charges on the freight from Allenton to Wilmington, but the way bill showed that there were "advance charges" from Utica to Allenton, and the freight came through without having been taken off the cars at Allenton. There was an agreement between the plaintiff and the shipper that if the freight did not come up to a certain test, which it did not do, the plaintiff could return it. The carrier had no knowledge of this agreement.

When the boilers were rejected by the plaintiff, it tendered payment of the freight and charges from Allenton to Wilmington, and attached the boilers for the $800, which it had advanced on a draft from the consignor and for which it claimed the return, and for the freight paid. The carrier contended that it had a lien upon the freight for the entire transit charges from Utica, N. Y., to Wilmington, N. C., which the plaintiff denied, but paid the freight and charges on the goods from Allenton to Wilmington, and, under the order of the court paid into the court the charges from Utica to Allenton to abide the judgment of the court.

We think the court was in error in holding that the carrier was not entitled to his lien upon the freight for the advance charges from Utica to Allenton. In Hutchinson on Carriers (3 ed.), sec. 660, it was held that the shipper of goods may at any time countermand the directions as to consignment and require the carrier to redeliver to himself, and that when the consignor changes the destination or diverts the goods to a new consignee the reconsignment does not break the connection. *Trading Co. v. R. R.,* 178 N. C., 182, but the new destination is regarded as the original one, quoting *Myers v. R. R.,* 171 N. C., 190.

The carrier has a lien on goods to secure the payment of freight and charges in the nature of demurrage, accruing during its transportation, Hutchinson on Carriers (3 ed.), sec. 862. The freight charges are a lien on the goods transported, and when one carrier pays the charges of a preceding carrier it is subrogated to the rights of that carrier, and may demand the entire freight charges before surrendering the shipment. *R. R. v. Pearce,* 192 U. S., 397.

The bill of lading in this case showed that the shipment was from the Easton Machinery Company to itself, as consignee with order "Notify Hammer Lumber Company." When the plaintiff took up the bill of lading, paying the $800, and later attached the goods for a breach of agreement between itself and the Easton Machinery Company, it was only entitled to take the goods subject to any lien thereon which the Easton Machinery Company owed thereon, which included the "advance charges" for the shipment from Utica, N. Y., to Allenton, Pa.

As between the purchaser, the Hammer Lumber Company, and the Easton Machinery Company, the former owed only the purchase price plus the freight from the point of shipment expressed or implied, *i. e.,* from Allenton, but as between the Easton Machinery Company and the carrier the shipment being to the Easton Machinery Company as consignee, that company could only receive the boilers upon payment of all the charges due the carrier thereon by the Easton Machinery Company, *i. e.,* from Utica to Wilmington, and the plaintiff was not entitled to demand the delivery of the boilers nor to subject them to the debt due it by its vendor until the payment of all the charges thereon due by the Easton Machinery Co. The judgment must be reversed and entered directing payment to the carrier of the sum deposited in court, $236.36, and the costs attending the controversy over said matter.

The carrier also excepted because the court adjudged that $267.80, the demurrage charges, war tax, etc., accruing between 23 September, 1919, when the boilers were attached, down to 23 October, 1919, when they were sold, should be paid to the carrier. The carrier was entitled to a lien for said charges and payment thereof out of the proceeds of the sale of the goods, the demurrage not having been caused by any default on its part.

A carrier cannot enforce collection of storage charges arising from its wrongful refusal to deliver goods to consignee, *Hockfield v. R. R.,* 150 N. C., 419. Nor hold the goods for a lien for back freight on other goods. But the demurrage charges here were caused by the failure to pay the rightful charges due upon these identical goods, which were due by the consignor, who had shipped them to the order of itself as consignee, and the carrier could not be deprived of such lien by a delay to deliver caused by the controversy between the vendor and vendee, and the failure of the plaintiff to pay the rightful charges.

Reversed.